INSTITUTE IN BASIC LIFE PRINCIPLES, INC v WATERSMEET TOWN-
SHIP (AFTER REMAND)

Docket No. 174822. Submitted February 6, 1996, at Grand Rapids. Decided
May 31, 1996, at 9:05 A.M. Leave to appeal sought.

The Institute in Basic Life Principles, Inc., petitioned the Tax Tribunal
to review Watersmeet Township's assessment of ad valorem prop-
erty taxes on its property in the township, arguing that it was
exempt from taxes as a nonprofit, charitable, religious, and educa-
tional organization. The Tax Tribunal granted the township's
motion to dismiss. The petitioner appealed, and the Court of
Appeals, WEAVER, P.J., and McDONALD and NEFF, JJ., affirmed the tri-
bunal's decision with regard to the claimed exemptions for educa-
tional and charitable organizations and remanded the matter to the
tribunal to determine whether the petitioner qualified for an
exemption as a house of public worship. Unpublished opinion per
curiam of the Court of Appeals, issued December 29, 1992 (Docket
No. 140633). The Supreme Court denied leave to appeal. 442 Mich
930 (1993). On remand, the tribunal ruled that the petitioner's prop-
erty was not exempt because the petitioner was not a religious
society because it had no members and prescribed no form of wor-
ship. The petitioner appealed.

After remand, the Court of Appeals *held*:

1. The tribunal erred in interpreting the exemption for a house of
public worship, MCL 211.7s; MSA 7.7(4p), to require that a religious
society have a formal membership roster and that it supervise or
discipline its members. A religious society's property is exempt
from taxation under the statute if it is used predominantly for relig-
ious services or for teaching the religious beliefs of the society.

2. An association or organization qualifies as a religious society
for purposes of the house of public worship tax exemption if its
predominant purpose and practice include teaching religious truths
and beliefs. The petitioner has for its object the teaching of relig-
ious principles and therefore falls within the definition of a relig-
ious society.

3. MCL 211.7s; MSA 7.7(4p) does not require that a religious soci-
ety have members. The general corporation act requires a religious
society to exercise superintendence over the discipline of its mem-

bers only if the religious society is connected with some organized church. MCL 450.186; MSA 21.187. The petitioner is not connected with an organized church. Because the petitioner is organized as a nonprofit corporation as called for under the general corporation act, the Nonprofit Corporation Act, MCL 450.2305(1); MSA 21.197(305)(1), does not require the petitioner to have members. The statutory requirement regarding the property being used for a religious purpose is satisfied under the facts of this case.

4. The quantum of use test is not applicable to this action. The proper test is whether the entire property is used in a manner consistent with the purpose of the owning institution. Here, the property is used in a manner consistent with the petitioner's stated purpose of enrichment of youth and their families through Bible study and should have been found to be exempt from taxes.

Reversed.

1. TAXATION — RELIGIOUS CORPORATIONS AND ASSOCIATIONS — EXEMPTIONS — HOUSES OF PUBLIC WORSHIP — RELIGIOUS SOCIETIES.

The house of public worship tax exemption statute does not require a religious society seeking a tax exemption to have a formal membership roster and to supervise or discipline its members; property of a religious society is exempt from taxation under the statute where the property is used predominantly for religious services or for teaching the religious truths and beliefs of the society (MCL 211.7s; MSA 7.7[4p]).

2. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — NONPROFIT CORPORATION ACT — RELIGIOUS SOCIETIES — MEMBERS.

The Nonprofit Corporation Act does not require a nonprofit corporation to have members; a religious society organized as a nonprofit corporation is not required by the act to have members (MCL 450.2305[1]; MSA 21.197[305][1]).

3. TAXATION — RELIGIOUS CORPORATIONS AND ASSOCIATIONS — EXEMPTIONS — HOUSES OF PUBLIC WORSHIP — RELIGIOUS SOCIETIES.

The quantum of use test should not be used to determine whether the property of a religious society qualifies for a tax exemption under the house of public worship tax exemption statute; the proper test is whether the entire property is used in a manner consistent with the purposes of the religious society (MCL 211.7s; MSA 7.7[4p]).

*Stroup & Tresidder, P.C.* (by *Nathaniel W. Stroup*) and *Jordan Lorence,* for the petitioner.

*Geissler, Dean & O'Dea, P.C.* (by *Frederick K. Geissler*), for the respondent.

AFTER REMAND

Before: CORRIGAN, P.J., and BANDSTRA and W. A. Crane,* JJ.

CORRIGAN, P.J. Petitioner Institute in Basic Life Principles, Inc., appeals of right an order of the Tax Tribunal denying it an exemption from ad valorem property taxes as a house of public worship. We reverse.

I

UNDERLYING FACTS

Petitioner is a not-for-profit corporation that owns sixteen contiguous properties, totaling 1,800 acres, in respondent Watersmeet Township, Gogebic County. Four parcels are developed. Petitioner protested its Michigan property tax assessment for the years 1987 through 1990, arguing that it was exempt from taxes as a nonprofit, charitable, religious, and educational organization.[1]

In 1961, petitioner's founder, Reverend William Gothard,[2] incorporated petitioner's predecessor organization, which was designed to explain, primarily to young people, how the Bible can provide guidance. Petitioner accomplished this goal by conducting seminars on the Bible at Wheaton College in Illinois. In later years, petitioner expanded its work to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Petitioner is exempt from *federal* taxes as a charitable, religious organization. Property in Illinois that petitioner uses for *educational* purposes is also tax exempt.

[2] Gothard was on petitioner's board and served as its president when this litigation was pending in the Tax Tribunal.

include adults. When petitioner's seminars outgrew their original quarters, petitioner rented auditoriums across the country. Petitioner now conducts seminars around the world.

Petitioner holds some seminars on its Watersmeet Township property. The property contains Eagle's View Lodge, with fifteen rooms, and Northwoods Conference Center, which has ninety rooms, an auditorium for 350 people where worship services are held, a dining room for guests, and a gymnasium. Petitioner also uses the property to write religious materials for its seminars and for its home-schooling program, which petitioner established ten years ago. Six thousand Michigan families participate in the home-schooling program.

Petitioner is not a church and does not represent a religious denomination. Petitioner's board members and lecturers represent various denominations, including Baptist, Reformed Presbyterian, and Lutheran. Those involved with petitioner believe that the literal truth of the Bible is the inspired word of God.

In 1991, the Tax Tribunal granted respondent township's motion to dismiss. When petitioner appealed, this Court affirmed the tribunal's decision on the claimed exemptions for educational and charitable organizations.[3] *Institute in Basic Life Principles, Inc, v Watersmeet Twp*, unpublished opinion per curiam of the Court of Appeals, issued December 29, 1992 (Docket No. 140633). The panel remanded the case to the tribunal for further proceedings on

---

[3] Petitioner then applied for leave to appeal to our Supreme Court, which denied leave, 442 Mich 930 (1993).

whether petitioner qualified for an exemption as a house of public worship.[4]

On remand, the Tax Tribunal ruled that petitioner's property was not exempt because petitioner was not a religious society as defined in *Hamsher v Hamsher*, 132 Ill 273; 23 NE 1123 (1890), or in MCL 450.186; MSA 21.187. The tribunal reasoned that petitioner was not a religious society because it had no members and prescribed no form of worship. As an initial matter, we note that *Hamsher* is distinguishable from this case because it involved, not a tax exemption, but the right of an Illinois religious corporation to hold real property. Further, we reject the reasoning in *Hamsher* regarding the membership requirement, as will be explained.

II

THE DEFINITION OF A RELIGIOUS SOCIETY

In its present posture, this case presents an issue of first impression: whether the house of public worship tax exemption statute requires that a religious society have members. This Court's usual review of the Tax Tribunal's decisions is limited to deciding if the tribunal's factual findings are supported by competent, material, and substantial evidence. In the absence of fraud, this Court reviews whether the Tax Tribunal made an error of law or adopted an incorrect legal principle. *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 306; 497 NW2d 595 (1993). Statutory interpretation, however, is a question of law subject to

---

[4] Petitioner later requested exemptions for the tax years 1991 through 1993. The tribunal granted petitioner's motion to consolidate the cases. The tribunal dismissed petitioner's claims for exemptions based on its charitable and educational status.

review de novo on appeal. *DeKoning v Dep't of Treasury*, 211 Mich App 359, 361; 536 NW2d 231 (1995). Additionally, this Court generally defers to the longstanding construction of statutory provisions by a particular department of government. *Bachman v Dep't of Treasury*, 215 Mich App 174, 182; 544 NW2d 733 (1996). Nonetheless, where the agency's interpretation is clearly wrong, the longstanding interpretation of a statute by the agency that administers it does not control. *Id.*

When courts construe statutory meaning, their primary goal is to ascertain and give effect to legislative intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993); *State Treasurer v Schuster*, 215 Mich App 347; 547 NW2d 332 (1996). This Court should first look to the specific statutory language to determine the intent of the Legislature. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to intend the meaning that the statute plainly expresses. *Vargo v Sauer*, 215 Mich App 389; 547 NW2d 40 (1996). Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. *Tryc v Michigan Veterans' Facility*, 451 Mich 129; 545 NW2d 642 (1996); *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 322; 506 NW2d 283 (1993).

Courts should strictly construe exemption provisions in favor of the taxing unit because an exemption removes the burden on the exempt landowner to share in the support of local government; in essence, "exemption is the antithesis of tax equality." *Michigan Baptist Homes & Development Co v Ann Arbor*, 396 Mich 660, 670; 242 NW2d 749 (1976); *Chauncey &*

*Marion Derring McCormick Foundation v Wawatam Twp (After Remand)*, 196 Mich App 179, 182; 492 NW2d 751 (1992). A strict construction, however, does not require a strained construction, contrary to the legislative intent. *St Paul Lutheran Church v Riverview*, 165 Mich App 155, 158; 418 NW2d 412 (1987).

Petitioner argues on appeal that the tribunal erred in interpreting the exemption for a house of public worship to require that a religious society have a formal membership roster and that it supervise or discipline its members. We agree.

The statute provides:

> Houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and any parsonage owned by a religious society of this state and occupied as a parsonage are exempt from taxation under this act. Houses of public worship includes [sic] buildings or other facilities owned by a religious society and used predominantly for religious services or for teaching the religious truths and beliefs of the society. [MCL 211.7s; MSA 7.7(4p).][5]

Under the language of this statute, petitioner's property is exempt from taxation provided that petitioner is a religious society and provided that the property is used predominantly for religious services or for teaching the religious truths and beliefs of the society.

The statute does not define the term "religious society," although the usage of the term in the second quoted sentence suggests that the key test is whether an organization or association engages in teaching

---

[5] The parties do not dispute that the property in question is not a parsonage. See *St John's Evangelical Lutheran Church v Bay City*, 114 Mich App 616, 624-625; 319 NW2d 378 (1982).

religious truths and beliefs. This same inference can be drawn from the general corporation act, which also uses the term:

> Any 3 or more persons may incorporate a Sunday school society, or *other special religious society or union, not being a church, but having for its object the teaching of religious principles, or the associating together for religious work.* The incorporators shall subscribe articles similar to those prescribed for non-profit corporations generally, which articles shall also contain any special conditions or distinguishing principles upon which such corporation is founded, and, if connected with some organized church, the name of the church and a statement of the extent to which such church may exercise superintendence over the affairs of or discipline of the members of such Sunday school or other corporation. The corporations referred to in this section as Sunday schools or special religious societies, shall have all the rights, privileges, immunities and powers granted by this act to non-profit corporations generally in their secular affairs; and in their religious affairs they shall be governed solely by their articles and by-laws, and the system of discipline therein adopted. [MCL 450.186; MSA 21.187.]

We conclude from these statutory provisions that an association or organization qualifies as a "religious society" for purposes of the house of public worship tax exemption if its predominant purpose and practice include teaching religious truths and beliefs.[6]

---

[6] As noted earlier, the houses of public worship definition includes two requirements, that property be owned by a religious society and that it be used for religious purposes including the teaching of religious truths and beliefs. Our definition of "religious society" does not reduce that twofold requirement down to a single criterion because there may well be cases where facilities used by a religious society for teaching religious truths and beliefs are nonetheless not houses of public worship because the society does not own those facilities. Conversely, a facility owned by a

Petitioner has for its object the teaching of religious principles. Petitioner was incorporated in Michigan in 1974, and its corporate bylaws set forth its purposes as follows:

The purposes of this Corporation as stated in its Certificate of Incorporation are to introduce youth and parents to God's basic way of life through the Gospel of the Lord Jesus Christ; to give clear instruction on how to apply God's basic principles of life as revealed in the Scriptures, to develop meetings, seminars, radio broadcasts, television productions, printed literature, teaching curriculum, books, and other forms of media, producing or otherwise obtaining same as required; and to establish, organize and operate facilities for the training of personnel to accomplish the above and for the enrichment of youth, their families, their churches, their schools and their communities.[7]

Petitioner conducts seminars throughout the country about how the Bible can provide answers to typical problems. For example, petitioner held a seminar at Cobo Arena that was attended by over ten thousand people. Petitioner developed a home-schooling program that bases education on biblical principles to further spread Christianity. Petitioner has conducted special seminars for doctors, legislators, lawyers, pas-

---

religious society does not qualify for the houses of public worship exemption unless that facility is used for teaching religious truths and beliefs.

[7] Additional petitioner bylaws provide that its purposes include:

To assist families, churches, governments, and businesses in establishing the ethical, moral principles of the Bible upon which America and its law system were founded;

To provide specialized training in education, counseling, business, law and health in order to equip individuals to make wise decisions to benefit their lives and the lives of others;

To establish schools, training centers, and other facilities necessary to carry out these purposes along with the production of books and materials related to the training being given.

tors, and judges. Because petitioner's purpose is to teach religious principles, petitioner falls within the above definition of a religious society.

With respect to the tribunal's reasoning, nothing within MCL 211.7s; MSA 7.7(4p) requires that a religious society have members. This narrow interpretation of the statute, in reliance on out-of-state authority, precludes exemptions for property owned by ecumenical religious societies, such as petitioner, even though the property is used for teaching religious beliefs and truths. The Tax Tribunal's definition further excludes from exemption religious entities with only loose affiliations with organized religions. Although petitioner may not fall within the traditional definition of a religious society, that does not mean that it is not entitled to an exemption as a religious society under the house of public worship exemption.

Further, the Tax Tribunal erred in declining to award petitioner tax-exempt status in part because petitioner did not exercise superintendence over the discipline of its members. The general corporation act section quoted above requires such superintendence only "if" a religious society is connected with some organized church. Although Reverend William Gothard, petitioner's founder, was ordained as a minister of the LaGrange (Illinois) Bible Church in 1961,[8] petitioner is not connected with the LaGrange Bible Church. The statute thus cannot be read to imply that petitioner must exercise superintendence over the discipline of its members to be considered a religious society.

---

[8] Gothard continues to receive a salary from the LaGrange Bible Church as a supported missionary.

Additional statutory law supports this result. Under the Nonprofit Corporation Act, MCL 450.2101 *et seq.*; MSA 21.197(101) *et seq.*, a nonprofit corporation need not have members. The pertinent statute provides that "[a] corporation organized upon a directorship basis may or may not have members." MCL 450.2305(1); MSA 21.197(305)(1). Because petitioner is organized as a nonprofit corporation as called for under the general corporation act, the above statute does not require petitioner to have members.

Apart from the "quantum of use" issues we will address, there is no dispute that the statutory requirement regarding the property being used for a religious purpose is satisfied under the facts of this case. The record reflects that petitioner is a well-established, legitimate religious entity. It has used the Gogebic County property to further its religious purposes for over two decades. Its seminars have been attended by more than 2.5 million people over the years. In short, petitioner is not an ephemeral organization lacking a sincere purpose for which we open wide the tax-exemption door.

Next, petitioner claims that the tribunal's definition of "religious society" violates the federal and state constitutions. Given our resolution of the first issue, we need not discuss this issue.

III

THE QUANTUM OF USE TEST

Petitioner also argues that the Tax Tribunal erred in applying the quantum of use test. This Court first addressed the quantum of use test in *Lake Louise Christian Community v Hudson Twp*, 10 Mich App 573; 159 NW2d 849 (1968). The Court examined the

use of land owned by the plaintiff, a religious and educational nonprofit corporation. The Court was concerned with the frequency and quantum of the use of the plaintiff's wooded parcels for its stated purposes. The Court relied on the following criteria: (1) that the use was incidental or relative to the corporation's express purpose, and (2) that the property was used frequently for that purpose. *Id.* at 580.

This Court next considered, and rejected, the quantum of use test in *Nat'l Music Camp v Green Lake Twp*, 76 Mich App 608; 257 NW2d 188 (1977). The Court expressly held that the quantum of use test did not apply to educational organizations within the scope of the statute. *Id.* at 611, n 1. The Court found that the quantum of use test was "stringent," "rigorous," and "extreme." *Id.* at 611. The Court instead concluded that the property was used "in a manner consistent with the nature of the land in such a way that the purpose for which the owning institution is exempt, education, was plainly advanced." *Id.* at 612.

The Court in *Kalamazoo Nature Center, Inc v Cooper Twp*, 104 Mich App 657; 305 NW2d 283 (1981), also examined the property owner's use of the property in an educational setting. The Court determined that the owner used the property in accordance with its stated purposes. The Court ultimately decided that physical use of the property was not a condition precedent to tax exemption and that the statute did not require actual physical use. *Id.* at 666. The Court added that the owner's use of the property was not occasional or de minimus. Given those circumstances, the Court stated that the quantum of use test was not a bar to the tax-exempt status of the property. *Id.* at 667.

More recently, in *McCormick Foundation, supra,* the Court again declined to apply the quantum of use test, following *Nat'l Music Camp, supra.* The Court decided that the entire property was used in a manner that was consistent with the property owner's charitable purposes. *McCormick Foundation, supra* at 187-189.

Although the cases rejecting the quantum of use test involve educational institutions rather than houses of public worship, their reasoning applies here. We decline to invite the Tax Tribunal to apply the rigorous quantum of use test, finding that the test would unnecessarily intrude into the affairs of religious organizations. Rather, we adopt the criteria employed in *Nat'l Music Camp* and *McCormick Foundation* and ask whether the entire property was used in a manner consistent with the purposes of the owning institution. This test avoids undue entanglement in the province of religious entities, and more closely conforms with the requirement under the exemption statute that the property be used predominantly for teaching the religious truths of the society.

In this case, petitioner's stated purpose was the enrichment of youth and their families through Bible study. Petitioner has conducted several religious seminars on the property. Petitioner has provided its seminar attendees access to the lakes on the property and has paved seven miles of road for bicycling. The large areas of undeveloped land permit the participants to walk through woods and think about what they have heard. Also, petitioner has composed religious pamphlets on the property. The record contains no evidence that the property was being used for purposes outside those enumerated in petitioner's bylaws.

Because petitioner and its guests use the property in a manner consistent with petitioner's stated purposes, the property should be exempt from taxes.

Reversed.