PONKE v PONKE

LUTZ v PONKE

Docket Nos. 174546, 183007. Submitted October 2, 1996, at Lansing. Decided March 14, 1997, at 9:10 A.M. Leave to appeal sought.

Jacqueline M. Ponke brought an action in the Oakland Circuit Court seeking a judgment of divorce from Raymond W. Ponke. The court, Steven N. Andrews, J., issued an ex parte restraining order that prohibited Raymond from transferring any property possessed by the parties, either jointly, severally, or otherwise during the pendency of the action. Three days later, Raymond murdered Jacqueline. Four days thereafter, Raymond retained Timonthy Ash & Associates (hereafter Ash) to defend him against the murder charge. In consideration of Ash's representation, Raymond assigned his interest in his pension account and signed a quitclaim deed to the marital home to Ash. Raymond was convicted of first-degree murder and sentenced to life in prison without parole. The attorney who represented Jacqueline in the divorce action brought a motion to show cause why Raymond should not be held in contempt for violating the injunctive order. The court denied the motion and dismissed the action, determining that, because the divorce action abated upon Jacqueline's death, the restraining order was no longer in effect at the time Raymond transferred the assets. The attorney who represented Jacqueline appealed. (Docket No. 174546).

Dennis R. Lutz, as personal representative of the estate of Jacqueline M. Ponke, deceased, brought a wrongful death action in the Oakland Circuit Court against Raymond W. Ponke and another. Ash intervened in the action, seeking to protect its interest in the assets Raymond had transferred to it. The court, Rudy J. Nichols, J., granted the personal representative's motion for summary disposition against Ash, concluding that Raymond was precluded from transferring the pension and marital home to Ash pursuant to MCL 700.251; MSA 27.5251 and MCL 600.2922; MSA 27A.2922, which prohibit a surviving spouse who murders the other spouse of the marriage from benefiting from the murder. The court interpreted § 251 as mandating a finding that Raymond predeceased Jacqueline for purposes of transferring his interests in his pension and the marital

home. Ash appealed by leave granted from the order granting the motion. (Docket No. 183007). The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court in the divorce action properly found that the divorce action had abated at the time of the alleged violation of the injunction. Because the action had abated, the injunctive order was without effect. The order in Docket No. 174546 must be affirmed. The defendant is entitled to costs in Docket No. 174546.

2. MCL 700.251; MSA 27.5251 does not force Raymond to forfeit his ownership rights to property obtained before the murder or prevent him from retaining an interest in his own property. Because Raymond derived no benefit with regard to his pension as a result of Jacqueline's murder, the trial court erred in finding that Raymond had no interest in his pension to transfer to Ash.

3. Section 251(2) indicates that each joint tenant will take a one-half interest in the property when one joint tenant kills the other. The statute does not require the forfeiture of the murdering joint tenant's interest in the property; it merely prevents the murdering joint tenant from taking the murdered joint tenant's share of the property by right of survivorship. Therefore, Raymond retained a one-half interest in the marital home and could transfer his one-half interest to Ash. The trial court erred in ruling otherwise and its order granting summary disposition in Docket No. 183007 must be reversed. Neither party is entitled to costs in Docket No. 183007.

Docket No. 174546 affirmed; Docket No. 183007 reversed.

1. DIVORCE — DEATH OF PARTY — ABATEMENT OF ACTION — INJUNCTIONS — VIOLATIONS.

A divorce action abates where one of the parties dies before the entry of a judgment; although a trial court after the death may remedy a violation of an injunctive order in the action that occurred before the death, a remedy is not available where the alleged violation occurred after the death.

2. HOMICIDE — MURDER OF SPOUSE — ACQUIRING PROPERTY OR INTERESTS FROM WRONGFUL CONDUCT.

The statutory provision that prevents a spouse that murders the other spouse of the marriage from acquiring any property or interest as a result of that wrongful conduct does not force the murdering spouse to forfeit ownership rights to property obtained before the murder or prevent the murdering spouse from retaining an interest in the murdering spouse's own property (MCL 700.251; MSA 27.5251).

3. Joint Tenants — Homicide — Rights of Survivorship.

> A joint tenancy is severed when one joint tenant murders the other joint tenant and the murdering joint tenant no longer has rights of survivorship with regard to the murdered joint tenant's one- half interest; the murdering joint tenant does not forfeit the murdering joint tenant's one-half interest (MCL 700.251[2]; MSA 27.5251[2]).

*Larry Barnett*, for the plaintiff in Docket Nos. 174546 and 183007.

*Timothy R. Ash & Associates* (by *Timothy R. Ash*), for the intervenor.

Before: McDonald, P.J., and Bandstra and C. L. Bosman*, JJ.

Per Curiam. In Docket No. 174546, the attorney who represented plaintiff Jacqueline Ponke in a divorce action[1] appeals as of right from an order denying a motion to show cause why defendant Raymond W. Ponke should not be held in contempt for violating an injunctive order prohibiting him from transferring assets during the pendency of the parties' divorce action. In Docket No. 183007, intervenor, Timothy R. Ash & Associates (hereafter Ash), appeals by leave granted from an order granting a motion for summary disposition by the personal representative of Jacqueline's estate in a wrongful death action brought against Raymond Ponke. The appeals were consolidated. We affirm in Docket No. 174546, and reverse in Docket No. 183007.

Jacqueline Ponke filed a complaint for divorce against defendant Raymond Ponke in December 1993. On January 4, 1994, the trial court issued an ex parte

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Since Jacqueline Ponke's death, no one has assumed her status as plaintiff in the divorce action.

restraining order. The order prohibited Raymond from transferring "any property possessed by the parties hereto, either jointly, severally or otherwise, during the pendency of this suit or until further Order of this Court," and was served on Raymond on January 5, 1994. Three days later, on January 8, 1994, Raymond bludgeoned Jacqueline to death with a hammer. On January 12, Raymond retained Ash to defend him against the murder charge. In consideration of Ash's representation, Raymond signed his pension and a quitclaim deed to the marital home to Ash.[2] Thereafter, the personal representative of Jacqueline's estate filed a wrongful death action against Raymond in which Ash intervened to protect its interest in the assets Raymond had transferred to it.

In the divorce action, Jacqueline's attorney filed a motion to show cause why Raymond should not be held in contempt for violating the injunctive order prohibiting him from transferring assets during the pendency of the divorce action. The court denied the motion, determining that because the divorce action abated upon Jacqueline's death, the restraining order was no longer in effect at the time Raymond transferred the assets.

On appeal, Jacqueline's attorney argues the trial court erred in failing to hold Raymond in contempt for violating the injunction. Whether the injunction remained effective after Raymond killed his wife is a question of law this Court reviews de novo. *Burgess v Clark*, 215 Mich App 542; 547 NW2d 59 (1996). We find no error in the court's ruling. Where one of the

---

[2] Raymond was convicted of first-degree murder and sentenced to life imprisonment without parole.

parties to a divorce action dies before the entry of a judgment, the action abates because there is no longer any marriage to dissolve. *LeTarte v LeTarte*, 32 Mich App 289; 188 NW2d 673 (1971). Jacqueline's attorney's reliance on *Irvin v Irvin*, 93 Mich App 770; 286 NW2d 920 (1979), to support the claim a trial court may enforce a penalty for violation of an injunctive order in a divorce action after one of the parties dies, is misplaced. Although in *Irvin*, this Court found the trial court could remedy a violation of an injunctive order in a divorce action after the violator's death, both parties to the divorce were living when the husband violated the injunction. Thus, the divorce proceedings had not abated at the time of the violation. In the instant case, Raymond violated the injunction after his wife's death. Here, the divorce action had abated at the time of the alleged violation and the injunctive order consequently was without effect. The trial court did not err in denying relief with regard to the motion to show cause.

In the wrongful death action, the personal representative of Jacqueline's estate filed a motion for summary disposition against Ash, seeking a determination Ash did not have any claim to the assets that were transferred to it by Raymond. The trial court granted the motion, concluding Raymond was precluded from transferring the pension and marital home to Ash pursuant to MCL 700.251; MSA 27.5251 and MCL 600.2922; MSA 27A.2922[3], which prohibit a surviving spouse who "feloniously and intentionally"

---

[3] Although MCL 600.2922; MSA 27A.2922, the wrongful death act, states it is subject to MCL 700.251; MSA 27.5251, it has no direct bearing on the issues raised in this appeal.

kills the other spouse of the marriage from benefiting from the killing.

On appeal, Ash claims the trial court erred in interpreting MCL 700.251; MSA 27.5251 as mandating a finding Raymond predeceased his wife for purposes of transferring his pension and his separate interest in the marital home. We agree.

The statute provides in relevant part:

> (1) A surviving spouse, heir, or devisee who feloniously and intentionally kills or aids and abets the killing of the decedent is not entitled to any benefits under the will or under intestate law, and the estate of the decedent passes as if that spouse, heir, or devisee predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the devisee passes as if the devisee predeceased the decedent.
>
> (2) A joint tenant who feloniously and intentionally kills or aids and abets the killing of another joint tenant thereby effects a severance of the interest of the decedent so that the share of the decedent passes as his or her property and that joint tenant does not have rights by survivorship. This subsection applies to joint tenancies and tenancies by the entirety in property, joint accounts in banks, savings and loan associations, credit unions, and other financial institutions, and any other form of coownership with survivorship incidents.
>
> \*　　\*　　\*
>
> (5) Any other acquisition of property or interest by the killer or by one who aids and abets the killer is treated in accordance with the principles of this section.
>
> \*　　\*　　\*
>
> (7) This section does not affect the rights of any person who, before rights under this section were adjudicated, purchases, from the killer or aider and abettor for value and without notice, property which the killer or aider and abet-

tor would have acquired except for this section, but the killer or aider and abettor is liable for the amount of the proceeds or the value of the property.

In construing statutory meaning, a court's primary goal is to ascertain and give effect to legislative intent. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7; 551 NW2d 199 (1996). This Court should first look to the specific statutory language to determine the intent of the Legislature. *Id.* The Legislature is presumed to intend the meaning that the statute plainly expresses. *Id.* Judicial construction of the statute is not permitted where the plain and ordinary meaning of the language is clear. *Id.*

The provisions of MCL 700.251; MSA 27.5251 prevent the murdering spouse from acquiring any property or interest upon the death of the decedent spouse, thereby precluding the murdering spouse from "benefiting" from the killing. Section 251(1) mandates that the estate of the murdered spouse pass as if the murdering spouse predeceased the murdered spouse. The provision clearly provides that the property appointed by the will of the decedent to or for the benefit of the murdering spouse passes as if the murdering spouse predeceased the decedent. However, the provision does not force a murdering spouse to forfeit ownership rights to property obtained before the murder. Likewise, § 251(5) prohibits a murdering spouse from acquiring any other property or interest as a result of that wrongful conduct, but does not prevent the murdering spouse from retaining an interest in the murdering spouse's own property. In the instant case, because Raymond was the principal on his pension while his wife was a beneficiary, he

did not acquire his pension upon the death of his wife, and the pension would not have been devised to Raymond upon his wife's death. With regard to Raymond's pension, Raymond derived no benefit from his wife's death. The trial court erred in ruling Raymond had no interest in his pension to transfer to Ash.

We also find error in the court's conclusion Raymond forfeited his interest in the marital home. Section 251(2) provides that when a joint tenant murders the other joint tenant, the tenancy is severed, and the murdering spouse no longer has rights of survivorship. A plain reading of subsection 2 indicates each joint tenant will take half an interest in the property when one spouse kills the other. The statute does not require the forfeiture of the murdering spouse's interest in the property. Subsection 2 merely precludes the murdering spouse from taking the murdered spouse's share of the property by a right of survivorship. Thus, when Raymond killed his wife, he may have severed the joint tenancy in their home, but he still retained a one-half interest in it. The statute therefore did not preclude Raymond from transferring his interest to Ash for payment of his legal expenses.[4] The trial court erred in so ruling.

In Docket No. 174546, the court's order denying relief regarding the motion to show cause is affirmed. In Docket No. 183007, the court's order granting summary disposition in favor of the personal representative with regard to Ash's claim to an interest in Ray-

---

[4] Because we have found Raymond possessed an interest in the marital home which he could properly transfer to Ash, and because the record is incomplete with regard to the facts surrounding the transfer, we decline to address Ash's claim it is a bona fide purchaser of an interest in the marital home pursuant to § 251(7). However we note our skepticism that Ash acquired any interest other than that of a lien holder.

mond's pension and share of the marital home is reversed. In Docket No. 174546, costs are awarded to defendant. In Docket No. 183007, neither party is entitled to costs.