SHEPPARD v CRIME VICTIMS COMPENSATION BOARD

Docket No. 189137. Submitted February 12, 1997, at Lansing. Decided June 20, 1997, at 9:15 A.M.

Felicia R. Sheppard, a minor, by her next friend, Renee A. Sheppard, sought money from the Crime Victims Compensation Board after her father, Wayman Adams, was robbed and murdered while illegally selling drugs. The board, acting pursuant to MCL 18.361(5); MSA 3.372(11)(5), denied the claim on the basis that Adams had contributed to the infliction of his injury. Sheppard appealed by leave granted.

The Court of Appeals *held*:

The Victims of Crime Act of 1984, 42 USC 10601 *et seq.*, requires federally funded state crime victim compensation programs such as Michigan's to comply with certain mandates, including a requirement that compensation not be denied to any victim because of that victim's familial relationship to the offender or because of the sharing of a residence by the victim and the offender except pursuant to rules issued by the program to prevent unjust enrichment of the offender. Congress intended state crime victim compensation programs to balance the goals of compensating innocent familial claimants and preventing unjust enrichment of the offender where the claimant is a family member of or shares a residence with the offender.

In this case, the board acted contrary to congressional mandates in denying compensation merely because of the familial relationship and without balancing the goals of compensation of an innocent familial claimant and prevention of unjust enrichment of the offender. The decision of the board is reversed, and the case is remanded for a reevaluation of the claim.

Reversed and remanded.

T. P. PICKARD, J., dissenting, stated that Adams is properly considered under the crime victims compensation act as a claimant whose conduct may be examined by the board in determining whether compensation should be denied pursuant to MCL 18.361(5); MSA 3.372(11)(5) on the basis that he contributed to the infliction of his injury, that the appellant does not satisfy the definition of "victim" contained in the crime victims compensation act as

a person who suffers a personal physical injury as a direct result of a crime, and that, because she is not a victim as defined in the act, the congressional mandates relating to claims of those with familial relationships to offenders do not apply. The decision of the board should be affirmed.

Administrative Law — Crime Victims Compensation Board — Claims by Victims Related to Offenders.

The Crime Victims Compensation Board, in determining whether compensation should be awarded to a victim of a crime perpetrated by a member of the victim's family or by a person who shares a residence with the victim, must balance the goals of compensating innocent familial claimants and preventing unjust enrichment of the offender (42 USC 10602[b][7]; MCL 18.351 et seq.; MSA 3.372[1] et seq.).

*David D. Kohl,* for the appellant.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *and* John D. Walter, *Assistant Attorney General,* for the appellee.

Before: MacKenzie, P.J., and Holbrook, Jr., and T. P. Pickard*, JJ.

Holbrook, Jr., J. Felicia R. Sheppard appeals by leave granted from a decision and report of the Crime Victims Compensation Board (CVCB) denying her compensation claim. We reverse and remand.

Appellant was the minor[1] daughter of Wayman Adams. Adams was robbed and murdered while selling drugs in May 1993, and appellant filed a claim with the CVCB shortly thereafter. In August 1994, the board denied appellant's claim on the ground that "[t]he Victim contributed substantially to the infliction of the injury. . . ." Upon further inquiry by appellant regarding the basis of the board's decision, an eviden-

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] Appellant turned eighteen years old on November 21, 1995.

tiary hearing was held in June 1995. On August 31, 1995, the board issued a decision and report affirming its earlier decision. We granted appellant's application for leave to appeal, pursuant to MCL 18.358; MSA 3.372(8).

The CVCB was created and empowered by 1976 PA 223, becoming effective on March 31, 1977. MCL 18.351 *et seq.*; MSA 3.372(1) *et seq.* Section 4(1) of the act identifies persons who are eligible for compensation awards, including "[a] surviving . . . child . . . of a victim of a crime who died as a direct result of the crime." MCL 18.354(1); MSA 3.372(4)(1). Section 11(5) of the act discusses various aspects of the award process and provides in relevant part:

> The board shall determine whether the claimant contributed to the infliction of his or her injury and shall reduce the amount of the award or reject the claim altogether, in accordance with the determination. [MCL 18.361(5); MSA 3.372(11)(5).[2]]

It was under this statutory provision that the CVCB denied appellant's claim for compensation.

In reviewing a decision of an administrative agency, such as the CVCB, this Court must hold a decision unlawful and set it aside if substantial rights of the petitioner have been prejudiced because the decision, among other things, violates the constitution or a statute or is affected by substantial and material errors of law. MCL 24.306(1)(a) and (f); MSA 3.560(206)(1)(a)

---

[2] MCL 18.361(5); MSA 3.372(11)(5) was amended by 1996 PA 519, effective January 13, 1997, and now provides in subsection 6 that "[t]he commission shall determine whether the *victim's* misconduct contributed to his or her injury and shall reduce the amount of the award or reject the claim altogether, in accordance with the determination."

and (f); *Barker Bros Constr v Bureau of Safety & Regulation*, 212 Mich App 132, 136; 536 NW2d 845 (1995). In this case, we reverse the CVCB's decision because it contravenes a federal funding statute.

Pursuant to the federal Victims of Crime Act of 1984 (VOCA), 42 USC 10601 *et seq.*, Michigan's crime victim compensation program receives forty percent of its funding from the federal government. 42 USC 10602(a)(1). In 1988, Congress amended the VOCA to require that federally funded state programs comply with certain mandates. The mandate important for our purposes is found in 42 USC 10602(b)(7):

> (b) A crime victim compensation program is an eligible crime victim compensation program for the purposes of this section if—
>
> \*          \*          \*
>
> (7) such program does not, except pursuant to rules issued by the program to prevent unjust enrichment of the offender, deny compensation to any victim because of that victim's familial relationship to the offender, or because of the sharing of a residence by the victim and the offender. . . .

While the apparent reasoning behind the mandate was to ensure that victims of domestic violence and drunken driving were not excluded from the program merely because a family member was an offender,[3]

---

[3] See 134 Cong Rec S 17301 (daily ed. October 21, 1988), where the following statement of Senator Byrd was printed into the record:

> Mr. Metzenbaum. Mr. President, the drug bill before the senate today reauthorizes and expands the victims of crime act of 1984. I wholeheartedly support this reauthorization, and am especially pleased that it includes language I suggested to require states to offer compensation to victims of domestic violence and drunk driving.

the actual language of the mandate expresses Congress' intent that, in any case where the claimant is a family member of or shares a residence with an offender, the state compensation program must balance the goals of compensating innocent familial claimants and preventing unjust enrichment of the offender. Indeed, in adopting final program guidelines to assist state programs in rule promulgation, the Department of Justice has indicated that "[t]he rules relating to unjust enrichment should be applicable to *all* claims for compensation although it is recognized

This new victims compensation language amends section 1403(b) of the victims of crime act by requiring state victim compensation programs to make available compensation benefits to victims of domestic violence and drunk driving. The provision also prohibits victim compensation programs from denying compensation benefits to victims because of a familial relationship or because the victim lived with the offender at the time of the crime.

Some victim compensation programs have supported "household or family exclusions" because they fear an offender might somehow benefit from compensation received by the crime victim. In order to address these concerns, crime victim compensation programs are permitted by this provision to issue guidelines that would prevent the unjust enrichment of the offender. Crime victim compensation programs, domestic violence victims, and victim advocates alike share a common interest in preventing unjust enrichment of the offender.

One way that state compensation programs are successfully balancing the goals of making compensation benefits available to battered women and preventing the unjust enrichment of the offender is to utilize third party payments. By paying medical and other compensable bills directly, the programs need not worry that the offender will somehow benefit from the compensation award to the victim.

The attorney general's task force on family violence argues that the "legal response to family violence must be guided primarily by the nature of the abusive act, not the relationship between the victim and the abuser." Crime victim compensation programs can greatly assist in furthering this goal by treating domestic violence claims as compensable crimes and viewing domestic violence as it would other forms of criminal conduct.

that domestic violence cases have the greatest potential for unjust enrichment." Dep't of Justice, Final Program Guidelines, Victims of Crime Act Victim Compensation Grant Program, 62 Fed Reg 7050, 7056 (1997) (emphasis added). Thus, although the facts of this case do not involve domestic violence or drunken driving, the CVCB must still utilize the congressional balancing test in evaluating appellant's claim for compensation.

Notably, 42 USC 10602(b)(7) precludes denial of such claims "except pursuant to rules issued by the program to prevent unjust enrichment of the offender." Michigan's CVCB has explicit authority to promulgate rules under MCL 18.353(1)(a); MSA 3.372(3)(1)(a), yet none of its general rules—1983 AACS, R 18.351 through 18.367—pertains to the balancing test set out by Congress.[4]

---

[4] See Dep't of Justice, Final Program Guidelines, *supra*, 62 Fed Reg 7056-7057:

> 9. *Unjust Enrichment.* Except pursuant to rules issued by the compensation program to prevent unjust enrichment of the offender, the state cannot deny compensation to any victim because of that victim's familial relationship to the offender, or because of the sharing of a residence by the victim and the offender.
>
> Unjust enrichment, as the basis for denying crime victims compensation, must be based upon written rules issued by the state crime victims compensation program. "Rules" mean either written policies or directives developed and distributed by state crime victim compensation programs or rules adopted by legislative or administrative bodies. Such rules cannot have the effect of denying compensation to a substantial percentage of domestic violence victims. The rules relating to unjust enrichment should be applicable to all claims for compensation although it is recognized that domestic violence cases have the greatest potential for unjust enrichment.
>
> In general, programs must balance the goals of making compensation benefits available to victims and preventing unjust enrich-

Here, the claimant was denied compensation because her father was a contributing victim. By applying an absolute rule under MCL 18.361(5); MSA 3.372(11)(5) that claimants should be denied compensation merely because of their family relationship to the contributing victim, the CVCB acted contrary to congressional mandates. Accordingly, we reverse and remand this matter to the CVCB for reevaluation of appellant's claim in light of 42 USC 10602(b)(7) and its concomitant balancing test.

---

ment of offenders. State programs are strongly encouraged to work with domestic violence coalitions and representatives to this end.

In developing rules, the states are encouraged to consider the following:

a. Legal responsibilities of the offender to the victim under the laws of the state and collateral resources available to the victim from the offender. For example, legal responsibilities may include court-ordered restitution or requirements for spouse and/or family support under the domestic or marital property laws of the state. Collateral resources may include insurance or pension benefits available to the offender to cover the costs incurred by the victim as a result of the crime. However, as with other crimes, victims of domestic violence should not be penalized when collateral sources of payment are not viable, e.g., when the offender refuses to, or cannot, pay restitution or other civil judgments within a reasonable period of time or when the offender otherwise impedes direct or third party (i.e., insurance) payments.

b. Payments to victims of domestic violence which benefit offenders in only a minimal or inconsequential manner would not be considered unjust enrichment. To deny payments, in some instances, could serve to further victimize the claimant. For example, denial of medical or dental expenses solely because the offender has legal responsibility for the charges, but is unwilling, or unable to pay them, could result in the victim's inability to receive treatment.

c. Consultation with social services and other concerned governmental entities, as well as with private organizations that support and advocate on behalf of domestic violence victims.

d. The special needs of child victims of criminal violence especially when the perpetrator was the parent who may or may not have lived in the same residence.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

MacKenzie, P.J., concurred.

T. P. Pickard, J. (*dissenting*). Appellant appeals by leave granted the decision and report of the Crime Victims Compensation Board (CVCB) affirming the board's earlier denial of appellant's compensation claim.

Appellant was the minor daughter of Wayman Adams. Adams was robbed and murdered while selling illegal drugs on May 8, 1993, and appellant filed a claim with the CVCB shortly thereafter. The board denied appellant's claim on the ground that the victim, Wayman Adams, contributed substantially to the infliction of the injury and loss to the appellant. After a subsequent evidentiary hearing, the board issued a report affirming its earlier decision. From this report appellant appeals.

The CVCB was created and empowered by public act in 1976. MCL 18.351 *et seq.*; MSA 3.372(1) *et seq.* The act provides, in part, that the following persons are eligible for awards:

> (b) A surviving . . . child . . . of a victim of a crime who died as a direct result of the crime. [MCL 18.354(1); MSA 3.372(4)(1).]

Section 1 of the act provided the following pertinent definitions at the times relevant to this case:

> As used in this act:
>
> *      *      *

(b) "Claimant" means a victim or intervenor who is injured, or any other person eligible for an award pursuant to section 4(1) . . . *who files a claim pursuant to this act.*

\*    \*    \*

(i) "Victim" means a person who suffers a personal physical injury as a direct result of a crime [MCL 18.351; MSA 3.372(1) (emphasis added).]

Section 11(5) of the act discussed various aspects of the award process and provided, in relevant part, at the times relevant to this case:

The board shall determine whether the claimant contributed to the infliction of his or her injury and shall reduce the amount of the award or reject the claim altogether, in accordance with the determination. [MCL 18.361(5); MSA 3.372(11)(5).]

Appellant contends that because she is *the* claimant, and because she did not contribute to *her injury*, she is therefore not disqualified under § 11(5) and is entitled to compensation. Appellant contends that she is qualified despite the fact that her claim derives through her father, the "victim," who was illegally selling drugs and contributed substantially to the infliction of his own injury at the time of his murder.

In determining whether a "claimant" contributed to his own injuries, we must look to the definition of the term "claimant." Section 1 of the statute, which defines "claimant," is ambiguous because of the qualifier "*who files a claim pursuant to this act.*"

If the qualifier "who files a claim pursuant to this act" were applied to each category of claimant, the board would need to look at each individually. For example, if the victim filed a claim, the board would examine whether the victim substantially contributed

to his injury. This would be the same for intervenors and others entitled to make a claim. The board would look at each individual claimant's conduct to determine the viability of the claim. This is the analysis appellant wishes this Court to adopt.

The other possible analysis of this statute is that the qualifier "who files a claim pursuant to this act" applies only to the last category of claimant in § 1(b), "other person eligible for an award pursuant to Section 4(1)." Under this interpretation, the board would look at the conduct of the claimant—meaning the victim, intervenor, or other eligible person who files a claim, to determine the availability of relief. This analysis would require the board to look at the injured victim or intervenor's conduct in determining the other eligible person's claim. This is the interpretation apparently used by the board in denying appellant's claim.

Statutory interpretation is a question of law that an appellate court reviews de novo. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7; 551 NW2d 199 (1996).

Analysis of the language of the entire act gives insight into the legislative intent concerning a statutory provision to be interpreted. *Kizer v Livingston Co Bd of Commr's*, 38 Mich App 239, 249, 250; 195 NW2d 884 (1972). See also *Weems v Chrysler Corp*, 448 Mich 679, 700; 533 NW2d 287 (1995), and *General Motors Corp v Erves (On Rehearing)*, 399 Mich 241, 273; 249 NW2d 41 (1976) (opinion of WILLIAMS, J.).

The doctrine of the last antecedent, a rule of statutory construction, provides that qualifying words and phrases refer solely to the last antecedent where no

contrary intention appears. *General Motors Corp,
supra* at 252 (opinion of Coleman, J.).

In applying the rule to this case, the qualifying
words "who files a claim pursuant to this act" in
§ 1(b) refers to the last antecedent "any other person
eligible for an award pursuant to Section (4)(1)," not
to the previous antecedent, "a victim or intervenor
who is injured."

I would find that no contrary intention appears in
the statute. As applied in this case, "claimant" as
defined by statute means both Wayman Adams, the
injured victim, as well as his daughter, who was eligi-
ble to file a claim. Because Wayman Adams is in the
class of those defined as "claimant," the board was
obligated under § 4(1) to determine if Adams contrib-
uted to his own injuries and, if so, reduce or reject
the claim.

Further support of my opinion that this appellant
was not intended to recover under the act is provided
by the legislative intent. The 1996 legislative amend-
ments of MCL 18.361(6); MSA 3.372(11)(6), which
replaces MCL 18.361(5); MSA 3.372(11)(5), replaces
"claimant" with "victim."[1] This change is obviously
intended to clarify what the board is to consider
when determining to reduce or reject any claim made.
The amendment requires the board to determine if
the victim's misconduct contributed to the victim's
injury. If such a finding is made, the amended rule
allows the board to reduce or reject any claim made
under this act.

The previous rule stated:

---

[1] The 1996 legislative amendments became effective January 13, 1997.

(5) The board shall determine whether the *claimant contributed to the infliction of his or her own injury and shall reduce the amount of the award or reject the claim altogether, in accordance with the determination*. The board may disregard for this purpose the responsibility of the *claimant* for his or her own injury where the record shows that the injury was attributable to efforts by the claimant to prevent a crime or an attempted crime from occurring in his or her presence or to apprehend a person who had committed a crime in his or her presence. [MCL 18.361(5); MSA 3.372(11)(5) (emphasis added).]

The 1996 amended rule states:

The commission shall determine whether the *victim's misconduct contributed to his or her injury and shall reduce the amount of the award or reject the claim altogether, in accordance with the determination*. The commission may disregard for this purpose the *victim's responsibility* for his or her own injury if the record shows that the injury was attributable to the victim's efforts to prevent a crime or an attempted crime from occurring in his or her presence or to apprehend a person who had committed a crime in his or her presence. As used in this subsection, "*misconduct*" includes but is not limited to provocation of or participation in a crime contemporaneous with or immediately preceding the injury. [MCL 18.361(6); MSA 3.372(11)(6) (emphasis added).]

Pursuant to the federal Victims of Crime Act of 1984 (VOCA), 42 USC 10601 *et seq.*, Michigan's crime victim compensation program receives forty percent of its funding from the federal government. 42 USC 10602(a)(1). In 1988, Congress amended the VOCA to require that federally funded state programs comply with certain mandates. The mandate relating to this case is found at 42 USC 10602(b)(7):

(b) A crime victim compensation program is an eligible crime victim compensation program for the purposes of this section if—

\*     \*     \*

(7) such program does not, *except* pursuant to rules issued by the program *to prevent unjust enrichment of the offender*, deny compensation to any *victim* because of that *victim's* familial relationship to the offender, or because of the sharing of a residence by the victim and the offender. [Emphasis added.]

This federal mandate was intended to protect victims of domestic violence and drunken driving where the offender was a family member of or resided with the victim. This mandate is an exception to the general principle that a claim will not be paid under a crime victim compensation program if it would unjustly enrich the offender.

To properly interpret the applicability of this mandate to the facts of this case we must again turn to the definition section provided by the Michigan Crime Victims Compensation Act, because no definition section is provided by the federal act.

Section 1 of the Michigan crime victims compensation act provides the following definition:

As used in this act:

\*     \*     \*

(i) "Victim" means a person who suffers a personal physical injury as a direct result of a crime. [MCL 18.351(i); MSA 3.372(1)(i).]

Using this definition, it is clear that our appellant is not a victim as defined by the act. She did not suffer a physical injury as a direct result of a crime. This

appellant was not a physically injured victim of domestic violence or drunken driving where the offender was a family member or shared a residence with her. Under the facts of this case the appellant is not even a victim as defined. She is merely a claimant as defined earlier in this opinion.

It is patently clear from the reading of the federal statute that it was intended to provide compensation for victims injured by family members or by members of the same household. This is not what happened in this case. Our appellant was not injured by a family member or by a member of her household. Our appellant was not physically injured at all. She does not qualify as a victim as defined and is therefore not entitled to compensation under the act.

For these reasons, I respectfully dissent and would affirm the findings of the Crime Victims Compensation Board.