STARKS *v.* PRESQUE ISLE CIRCUIT JUDGE.

INTOXICATING LIQUORS—LICENSE—DISTANCE FROM CHURCH—RE-
LIGIOUS PURPOSES.

    Under Act No. 291, Pub. Acts 1909, 2 How. Stat. (2d Ed.) § 5091,
      forbidding the establishment of a bar within 400 feet along
      the street line from the front entrance of a church, a store or
      building formerly occupied as a flour and feed store, leased
      but not actually occupied by a religious organization, and
      not ready for occupancy at the time a license was granted to
      a liquor dealer, was not a church within the meaning of the
      act.[1]

Mandamus by Arthur E. Starks to compel Frank Em-
erick, circuit judge of Presque Isle county, to issue a pre-
liminary injunction in a suit instituted by relator to re-
strain one Carl Theis, defendant therein, from opening a
saloon in the city of Onaway. Submitted November 22,
1912. (Calendar No. 25,264.) Writ denied December 17,
1912.

*Fred P. Smith,* for relator.

*Victor D. Sprague,* for respondent.

BIRD, J. The relator seeks a writ of mandamus from
this court to compel the respondent circuit judge to issue
an injunction to restrain Carl Theis from conducting a
saloon in the city of Onaway, for the reason that it is
located within 400 feet from a church.

On the 3d day of June, 1912, the city council approved
the application of Carl Theis, and granted him a license
to conduct a saloon in the Waldorf Hotel block. On the
11th day of June his bond was approved by the council.
Following this action of the council, the prosecuting at-
torney, on the relation of Arthur E. Starks, filed a bill in

    [1] On the question what is a church, within a statute forbidding
traffic in intoxicating liquors within given distance of such a build-
ing, see note in 22 L. R. A. (N. S.) 194.

equity to restrain the county treasurer from issuing the receipt and card and to restrain Theis from operating his saloon, and made both of them parties defendant.   After the defendants' answers were filed, the circuit judge issued an order, directed to the defendants, to show cause why an injunction should not issue agreeable to the prayer of the bill.   A hearing thereon resulted in a denial of the writ.

It appears from the record that on the 5th day of June, 1912, a religious order, incorporated as the Reorganized Church of Jesus Christ of the Latter Day Saints, moved into its new quarters, which are within 400 feet from the proposed saloon.   This organization had been holding services in the city about $2\frac{1}{2}$ years prior to this date, and had occupied Wilson's Hall in which to conduct its services. In October, 1911, it decided, by resolution, to lease a portion of a building in the business district, which had only a short time before been occupied as a flour and feed store. The lease was to begin at the rate of $8 per month upon the expiration of its lease of the Wilson Hall, which would occur on June 5, 1912.   On the 3d day of June, the date upon which the license was granted, its room had been partitioned off from a larger room, but was not yet ready for occupancy, and was not actually occupied by the organization for church purposes until the 5th day of June.

One of the questions, and we think the important one, discussed in the briefs of counsel is whether the license granted to Theis would be affected by the subsequent occupancy of the new quarters for church purposes.

The statute (Act No. 291, § 37, Pub. Acts 1909, 2 How. Stat. [2d Ed.] § 5091) which gave rise to this controversy provides in part that:

" No license shall be issued to any one to open up and establish a new bar or saloon having its front entrance within four hundred feet along the street line from the front entrance of a church or public schoolhouse or in any residence district, unless," etc.

173 Mich.—30.

This statute has reference to churches and schoolhouses that are within the prohibited distance from the proposed saloon when the license is granted, and not to those that are established and located within the prohibited distance after the license is granted. The law makes it obligatory upon one who intends to open a saloon to present his application in writing and under oath to the council, showing therein the location of the proposed saloon, and also showing that he is not disqualified, under the statute, to engage in the business. Section 4, Act No. 291. The same section authorizes and empowers the council to pass upon the qualifications of the applicants and to grant licenses. When these steps are taken and the license is granted, and the approval of the council is indorsed upon the application, the license is issued, within the meaning of this statute; and it would not seem to be a reasonable construction of the law to permit the license to be defeated by the subsequent act of establishing a church within the prohibited distance. *In re Cheney*, 35 Misc. Rep. 598, 72 N. Y. Supp. 134; *People v. Lammerts*, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107.

The applicant about to engage in the business at a certain location might or might not have knowledge of the intended use for church purposes of some building within prohibited zone; whereas, if it were being actually used for such purpose, he would have a way of informing himself. It is the actual occupancy, rather than the contemplated occupancy that should determine the question. *In re Rupp*, 54 Misc. Rep. 1, 105 N. Y. Supp. 467.

A further question raised by the relator is that the proposed saloon is within 400 feet from the Wilson Hall, where it had been holding church services for upwards of two years. The measurement is made by taking the distance from the front entrance of the Wilson Hall to the front entrance of the Waldorf Hotel. The record shows that the proposed saloon has a front entrance into the street, but that such entrance is more than 400 feet from the Wilson Hall. It is further shown that on the 2d day of June,

when the license was granted, there was a door leading from the hotel office into the saloon. It is argued that, because many will likely enter the saloon from the hotel office, the measurement should be taken from the front entrance of the hotel. We cannot agree to this reasoning. The statute prescribes that the measurement shall be made from the front entrance of the saloon. The fact that one may enter the saloon from the hotel office will not thereby convert the hotel office into a saloon. Where the front entrance is, is determined by the physical construction and arrangement of the room and its relation to the street, rather than by the entrance which is most used.

We are of the opinion that the trial court reached the right conclusion, and the writ of mandamus prayed for will be denied, with costs of this court to the respondent.

BROOKE, J., concurred with BIRD, J.

STONE, J. I concur in the result, on the ground that the room in question is not a church, within the meaning of the statute.

MOORE, C. J., and STEERE, McALVAY, BROOKE, KUHN, and OSTRANDER, JJ., concurred with STONE, J.