LAFARGE MIDWEST, INC v CITY OF DETROIT

Docket No. 289292. Submitted April 7, 2010, at Detroit. Decided October 12, 2010, at 9:00 a.m.

Lafarge Midwest, Inc., petitioned the Tax Tribunal after the city of Detroit included a tax for servicing school debt on its 2005, 2006, and 2007 property tax bills, despite the fact that the property was located in a renaissance zone and was thus generally exempt from tax under MCL 211.7ff(1). Lafarge moved for summary disposition, arguing that none of the exceptions to the general exemption applied. In particular, Lafarge argued that because the tax had been approved by school district electors, rather than electors of a "local governmental unit" as defined by the Michigan Renaissance Zone Act, the exception from exemption in MCL 211.7ff(2)(b) did not apply. The Tax Tribunal agreed that school districts were not included in the definition of "local governmental unit" in MCL 125.2683. The tribunal granted Lafarge's motion and ordered the city to remove the tax from Lafarge's tax bills and refund any overpaid taxes. The city appealed.

The Court of Appeals *held*:

Under MCL 211.7ff(1), property in a renaissance zone is exempt from taxes collected under the General Property Tax Act unless an exception applies. The exception for ad valorem property taxes under MCL 211.7ff(2)(b) only extends to those levied "for the payment of principal and interest of obligations approved by the electors or obligations pledging the unlimited taxing power of the local governmental unit." This language unambiguously excepts only obligations approved by the electors of the local governmental unit and obligations pledging the unlimited taxing power of the local governmental unit. MCL 125.2683 defines "local governmental unit" as "a county, city, village, or township," which does not include a school district. The exception for obligations approved by the electors of a local governmental unit did not apply. Thus, Lafarge's property was exempt from the tax.

Affirmed.

K. F. KELLY, J., dissenting, would have held that MCL 211.7ff(2)(b) unambiguously provides an exception permitting ad valorem property taxes on property in renaissance zones if the tax is levied for

obligations approved by the electors or for obligations pledging the unlimited taxing power of the local governmental unit. The phrase "of the local governmental unit" refers only to "obligations pledging the unlimited taxing power," not "obligations approved by the electors." Because the tax resulted from an obligation approved by the school district's electors, the exception applied, and Lafarge's property should have been subject to taxation. The Tax Tribunal's decision should have been reversed.

TAXATION — RENAISSANCE ZONE ACT — EXEMPTION FROM TAXATION — EXCEPTIONS — PROPERTY TAXES.

Property located in a renaissance zone is exempt from taxes under the General Property Tax Act unless an exception applies; the statutory exception for ad valorem property taxes only extends to those levied for the payment of principal and interest of obligations approved by the electors of the local governmental unit or for obligations pledging the unlimited taxing power of the local governmental unit; because a school district is not a local governmental unit under the Michigan Renaissance Zone Act, an obligation approved by the electors of a school district does not fall within the exception (MCL 125.2683, MCL 211.7ff[2][b]).

*Dickinson Wright PLLC* (by *Robert F. Rhoades* and *Adam D. Grant*) for petitioner.

*Krystal A. Crittendon*, Corporation Counsel, and *Joanne D. Stafford* and *Kevin Richard*, Assistant Corporation Counsels, for respondent.

Before: JANSEN, P.J., and CAVANAGH and K. F. KELLY, JJ.

CAVANAGH, J. Respondent, the city of Detroit, appeals as of right an order of the Michigan Tax Tribunal granting petitioner's motion for summary disposition under MCR 2.116(C)(10). We affirm.

Petitioner, Lafarge Midwest, Inc., was responsible for the payment of ad valorem property taxes on three parcels of land that are the site of its cement plant, which is located within the Delray Renaissance Zone in

Detroit. In 2005, 2006, and 2007 petitioner's real property tax bills included a school debt service tax of 13 mills, consistent with the school district electors' approval of $116,156,390 in school building and site bonds. The 13-mill property tax was levied by the Detroit Public School District for retirement of bonded debt. Petitioner filed a petition with the Michigan Tax Tribunal, challenging the tax on the ground that the property was subject to the Michigan Renaissance Zone Act (RZA), MCL 125.2681 *et seq.*, and exempt from this school debt service tax.

Subsequently, petitioner moved for summary disposition, arguing that the property was exempt from the school debt service tax because none of the exceptions to the general exemption set forth in MCL 211.7ff applied to the property. First, petitioner argued, the tax levied was not a special assessment under the exception set forth in MCL 211.7ff(2)(a). Second, because the school debt service tax was not levied by a "local governmental unit," i.e., a county, city, village, or township, the exception to the general exemption set forth in MCL 211.7ff(2)(b) did not apply. Third, the tax was not levied pursuant to any of the Revised School Code sections listed under the exception set forth in MCL 211.7ff(2)(c). And, fourth, a casino was not being operated on the property, so the exception set forth under MCL 211.7ff(3) did not apply.

More particularly, with regard to the second exception to the exemption, petitioner argued that a "school district" is not considered a "local governmental unit" under the definition provided in the RZA, MCL 125.2683(g).[1] And contrary to respondent's anticipated claim, the definition of "local governmental unit" pro-

---

[1] This is the current citation. At other times relevant in this case, the definition has appeared in other subdivisions of this section.

vided in the General Property Tax Act was inapplicable to this case involving the RZA. In support of its position, petitioner cited the case of *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 166; 744 NW2d 184 (2007), which held that MCL 211.7ff must be liberally construed to effectuate the purposes of the RZA—securing tax relief for properties located in renaissance zones. Accordingly, petitioner argued, because the debt obligations were approved by school district electors and not electors "of the local governmental unit," this exception to the general exemption did not apply. Thus, petitioner's property was exempt from the tax, and it was entitled to a refund of the overpaid tax as well as an order granting summary disposition in its favor.

In response to petitioner's motion for summary disposition, the city argued that MCL 211.7ff(2)(b) actually contains two separate and independent clauses. The statute provides that property in a renaissance zone is not exempt from the collection of "[a]d valorem property taxes specifically levied for the payment of principal and interest of obligations approved by the electors *or* obligations pledging the unlimited taxing power of the local governmental unit." MCL 211.7ff(2)(b) (emphasis added). At issue in the *Kinder* case was the second clause, not the first clause, and because the first clause was at issue in this case, *Kinder* provides no guidance. The city claimed that the tax was levied "to satisfy the indebtedness of the School District of the City of Detroit." Thus, the fact that the school district is not a "local governmental unit" as that term is defined in the RZA is irrelevant; the tax was levied for the repayment of principal and interest of obligations approved by the electors. The city argued that if the "Legislature [had] intended for the limiting term 'local governmental unit' to apply to both clauses of MCL 211.7ff(2)(b) it could have easily done so by the simple placement of a couple

of commas." Accordingly, the city requested that the tribunal deny petitioner's motion for summary disposition and enter a judgment in the city's favor.

The Tax Tribunal agreed with petitioner, holding that the definition of "local governmental unit" does not include school districts and that the city's "stance of the Legislature's intent [is] unconvincing." The tribunal concluded that, in light of the clear definition of "local governmental unit," as well as the mandate to read the property tax act in conjunction with the RZA, a clerical error or mutual mistake of fact existed and resulted in an error on petitioner's tax bills. Accordingly, petitioner's motion for summary disposition was granted, and the city was ordered to remove the school debt tax from the taxes charged to the property and refund any overpaid taxes. This appeal followed.

On appeal, the city argues that the general exemption set forth in MCL 211.7ff(1) did not apply to petitioner's property; rather, the exception to that exemption set forth in MCL 211.7ff(2)(b) applied because the tax at issue was approved by the school district electors for payment of school debt principal and interest. We disagree.

In the absence of fraud, our review of the Tax Tribunal's decision is limited to determining whether the tribunal misapplied the law or adopted a wrong principle. *Wexford Med Group v City of Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). The tribunal's interpretation of a statute, however, presents a question of law that is reviewed de novo on appeal. *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 707; 664 NW2d 193 (2003).

MCL 125.2682 of the RZA provides:

> The legislature of this state finds and declares that there exists in this state continuing need for programs to

assist certain local governmental units in encouraging
economic development, the consequent job creation and
retention, and ancillary economic growth in this state. To
achieve these purposes, it is necessary to assist and encour-
age the creation of renaissance zones and provide tempo-
rary relief from certain taxes within the renaissance zones.

In accord, MCL 125.2689(2)(a) of the RZA states that,
except as provided in MCL 125.2690, property in a
renaissance zone is exempt from the collection of taxes
under MCL 211.7ff of the General Property Tax Act.
And MCL 211.7ff provides in part as follows:

(1) For taxes levied after 1996, except as otherwise
provided in subsections (2) and (3) and except as limited in
subsections (4), (5), and (6), real property in a renaissance
zone and personal property located in a renaissance zone is
exempt from taxes collected under this act to the extent
and for the duration provided pursuant to the Michigan
renaissance zone act, 1996 PA 376, MCL 125.2681 to
125.2696.

(2) Real and personal property in a renaissance zone is
not exempt from collection of the following:

(a) A special assessment levied by the local tax collecting
unit in which the property is located.

(b) Ad valorem property taxes specifically levied for the
payment of principal and interest of obligations approved
by the electors or obligations pledging the unlimited taxing
power of the local governmental unit.

(c) A tax levied under section 705, 1211c, or 1212 of the
revised school code, 1976 PA 451, MCL 380.705, 380.1211c,
and 380.1212.

The dispute between the parties came to be centered
on the interpretation of MCL 211.7ff(2)(b). The city
argues that this exception to the general exemption
applied to petitioner's property because the taxes were
"levied for the payment of principal and interest of
obligations approved by the electors." The taxes were

not levied for "obligations pledging the unlimited tax-
ing power of the local governmental unit." The city
argues that the statute details two separate debt obli-
gations that are excepted from the exemption and that
the modifying phrase "of the local governmental unit"
only applies—consistently with the rule of the last
antecedent—to the second type of debt obligation for
which taxes may be levied, not the first type of debt
obligation, which is the one at issue here. In contrast,
petitioner argues that the phrase "of the local govern-
mental unit" applies and modifies both types of debt
obligations, consistently with the plain language and
purpose of the RZA. Thus, petitioner argues, because
the statute itself requires a different interpretation
than would be accorded by the application of the rule of
the last antecedent, that rule does not apply. See *Sun
Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d
119 (1999).

The primary goal in construing a statute is to discern
and give effect to the intent of the Legislature. *Murphy
v Mich Bell Tel Co*, 447 Mich 93, 98; 523 NW2d 310
(1994). The first criterion in determining intent is the
specific language of the statute. *United States Fidelity
& Guaranty Co v Mich Catastrophic Claims Ass'n (On
Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). The
fair and natural import of the terms employed, in view
of the subject matter of the law, governs. *People v
McGraw*, 484 Mich 120, 124; 771 NW2d 655 (2009). If
the plain and ordinary meaning of the statutory lan-
guage is clear, i.e., unambiguous, the Legislative intent
is clear. *Nastal v Henderson & Assoc Investigations, Inc*,
471 Mich 712, 720; 691 NW2d 1 (2005); *Lansing Mayor
v Pub Serv Comm*, 470 Mich 154, 157; 680 NW2d 840
(2004). In such a case, the Legislature is presumed to
have intended the meaning it plainly expressed; thus,

no further judicial construction is required or permitted, and the statute must be enforced as written. *Nastal*, 471 Mich at 720.

With regard to the issue of statutory ambiguity, the *Lansing Mayor* Court held that "a provision of the law is ambiguous only if it 'irreconcilably conflict[s]' with another provision, [*Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003)], or when it is *equally* susceptible to more than a single meaning." *Lansing Mayor*, 470 Mich at 166 (first alteration in *Lansing Mayor*). When is a provision equally susceptible to more than a single meaning? The *Lansing Mayor* Court held that a "reasonable disagreement" is not the standard for identifying ambiguity. *Id.* at 168. That is, "[a] provision is not ambiguous just because 'reasonable minds can differ regarding' the meaning of the provision." *People v Gardner*, 482 Mich 41, 50 n 12; 753 NW2d 78 (2008), quoting *Lansing Mayor*, 470 Mich at 165. The *Lansing Mayor* Court concluded that "a finding of ambiguity is to be reached only after 'all other conventional means of [ ] interpretation' have been applied and found wanting." *Lansing Mayor*, 470 Mich at 165, quoting *Klapp*, 468 Mich at 474 (alteration in *Lansing Mayor*). That is, "ambiguity is a finding of last resort." *Lansing Mayor*, 470 Mich at 165 n 6.

The provision at issue in this case is MCL 211.7ff(2)(b), which provides for the collection of

[a]d valorem property taxes specifically levied for the payment of principal and interest of obligations approved by the electors or obligations pledging the unlimited taxing power of the local governmental unit.

According to the city, the phrase should be read as follows: "Ad valorem property taxes specifically levied for the payment of principal and interest of [(1)] obligations approved by the electors or [(2)] obligations

pledging the unlimited taxing power of the local governmental unit." Thus the phrase "principal and interest of" would apply to both types of obligations, but the phrase "of the local governmental unit" would apply only to the second type of obligation, in accordance with the rule of the last antecedent. However, the statutory provision could also be read in the following manner: "Ad valorem property taxes specifically levied for the payment of [(1)] principal and interest of obligations approved by the electors or [(2)] obligations pledging the unlimited taxing power of the local governmental unit." Thus the phrase "principal and interest of" would only apply to obligations approved by the electors and not the obligations pledging the unlimited taxing power of the local governmental unit. In *Kinder*, 277 Mich App at 168-169, the respondent, the city of Jackson, made such an argument. In this case, the city of Detroit declines to take that position, claiming that the phrase "principal and interest of" "clearly" applies to both obligations, although it fails to identify why this interpretation is "clearly" accurate.

Petitioner offers the following construction of the statutory provision: "Ad valorem property taxes specifically levied for the payment of principal and interest of [(1)] obligations approved by the electors or [(2)] obligations pledging the unlimited taxing power[,] of the local governmental unit." The phrase "principal and interest of" would apply to both types of obligations, and the phrase "of the local governmental unit" would apply to both types of obligations. It follows, then, that another possible construction of the statutory provision is the following: "Ad valorem property taxes specifically levied for the payment of [(1)] principal and interest of obligations approved by the electors or [(2)] obligations pledging the unlimited taxing power[,] of the local governmental unit." The phrase "principal and interest

of" would only apply to obligations approved by the electors and not obligations pledging the unlimited taxing power, and the phrase "of the local governmental unit" would apply to both types of obligations.

As set forth earlier, to construe a statute we must first examine its language, according every word and phrase its plain and ordinary meaning and considering the grammatical context. MCL 8.3a; *United States Fidelity*, 484 Mich at 13. First, we turn to the phrase "principal and interest of." The issue whether this phrase applies only to "obligations approved by the electors" or whether it also applies to "obligations pledging the unlimited taxing power of the local governmental unit" has not been raised in this case. This issue was raised in *Kinder*, but the *Kinder* Court was not required to construe the provision on the facts of that case. *Kinder*, 277 Mich App at 168-169. Because this issue was not raised by the parties, we need not construe this statutory language but will assume for purposes of this case that the phrase applies to both obligations.

Next, we consider whether the phrase "of the local governmental unit" applies to "obligations approved by the electors," as held by the Tax Tribunal. Guidance is gleaned from the statutory language. The Legislature used the word "the" with respect to "electors." "The" is a definite article that, when used especially before a noun—like "electors"—has a specifying or particularizing effect. See *Robinson v City of Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010). Following the rationale of *Robinson*, because MCL 211.7ff(2)(b) refers to "the electors," we must determine to which "specific or particular" electors it refers.[2] If the provision had

_____

[2] The *Robinson* Court construed the "two-inch rule" set forth in MCL 691.1402a(2) of the governmental tort liability act, MCL 691.1401 *et seq*. *Robinson*, 486 Mich at 3, 5.

simply said "electors," it might have referred to electors generally, as the dissent opines. However, because the phrase "of the local governmental unit" is within the same statutory provision, we conclude that "the electors" must be the electors of the local governmental unit. This interpretation recognizes that the Legislature is presumed to be familiar with the rules of statutory construction, as well as the rules of grammar. See *In re Messer Trust*, 457 Mich 371, 380; 579 NW2d 73 (1998); *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 414; 766 NW2d 874 (2009). This construction is also in compliance with the mandate to " 'give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *Klapp*, 468 Mich at 468, quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). The dissent's interpretation of the provision ignores, and thereby renders surplusage or nugatory, the word "the" in "the electors." Accordingly, we also reject the dissent's claim that "[n]othing in the plain language of MCL 211.7ff(2)(b) specifies or limits which 'electors' must approve the obligation."

The city argues that, under the rule of the last antecedent, the modifying clause "of the local governmental unit" should only apply to the antecedent "obligations pledging the unlimited taxing power" and not to "obligations approved by the electors." Clearly, the rule of the last antecedent does not apply when its application results in a construction that is contrary to the plain language of the statute. See *Sun Valley Foods*, 460 Mich at 237. As discussed earlier, the statutory provision itself refers to "the electors," not merely "electors" in general.

Further, as our Supreme Court noted in *Robinson*, 486 Mich at 15, "to discern the Legislature's intent, statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." Therefore, we turn to MCL 211.7ff(2), which provides in relevant part:

> Real and personal property in a renaissance zone is not exempt from collection of the following:
>
> (a) A special assessment levied by the local tax collecting unit in which the property is located.
>
> (b) Ad valorem property taxes specifically levied for the payment of principal and interest of obligations approved by the electors or obligations pledging the unlimited taxing power of the local governmental unit.
>
> (c) A tax levied under section 705, 1211c, or 1212 of the revised school code, 1976 PA 451, MCL 380.705, 380.1211c, and 380.1212.

The statute clearly states that the exemption does not apply to "[a] special assessment levied *by the local tax collecting unit*" or to "[a]d valorem property taxes levied for payment of . . . obligations pledging the unlimited taxing power *of the local governmental unit.*" MCL 211.7ff(2)(a) and (b) (emphasis added). It would be inherently inconsistent to construe the statute so as to require the payment of ad valorem property taxes levied for obligations approved by *any* group of "electors" rather than, consistent with the statutory language and overall scheme, just *"the* electors" of the local governmental unit. This construction (1) complies with the mandate that "[e]ffect is to be given to every provision, and the whole statute is to be considered in order to achieve a harmonious and consistent result," *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 52; 731 NW2d 94 (2006), and (2) recognizes the fact that the Legislature is under no "obligation to cumbersomely

repeat language that is sufficiently incorporated into a statute by the use of such terms as 'the,' 'such,' and 'that,' " *Robinson*, 486 Mich at 17.

In summary, we agree with the Tax Tribunal's conclusion, albeit for different reasons, that the levy of the tax on petitioner's property was improper in that the taxes were not levied for the payment of "obligations approved by the electors" within the meaning of MCL 211.7ff(2)(b). After applying conventional means of statutory interpretation, we conclude that the phrase "of the local governmental unit" clearly applies to both the "obligations approved by the electors" and the "obligations pledging the unlimited taxing power." There is no ambiguity. Thus, the Tax Tribunal properly granted petitioner's motion for summary disposition and properly ordered the removal of the school debt service taxes from the taxes charged to petitioner's property, as well as a refund of any overpaid taxes.

Affirmed.

JANSEN, P.J., concurred.

K. F. KELLY, J. (*dissenting*). I respectfully dissent. I disagree with the majority's interpretation of the phrase "of the local government unit" in MCL 211.7ff(2)(b) as applying to both "obligations approved by the electors" and "obligations pledging the unlimited taxing power." Despite its conclusion that the provision is unambiguous, the majority reads additional terms into MCL 211.7ff(2)(b) and, thus, its holding is contrary to the plain language of the statute and also to the rules of statutory construction. In my view, the language of MCL 211.7ff(2)(b) is clear and unambiguous, and judicial construction of its language is not permitted. I would apply the plain and ordinary meaning of the

provision to the circumstances at issue and reverse the Tax Tribunal's decision that respondent improperly assessed the tax.

This Court reviews the Tax Tribunal's interpretation of a statute de novo. See *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 707; 664 NW2d 193 (2003). When interpreting the meaning of a statute, this Court's goal is to determine and give effect to the Legislature's intent. The first step is to review the language used. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996). The Legislature is presumed to intend the meaning that is plainly expressed by the words written. *Id.* If the language of a statute is clear and unambiguous, then judicial construction is not necessary, nor is it even permitted, *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007), and this Court must apply as written the language of the statute to the facts at issue, *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004), even if it results in an absurd outcome, *Decker v Flood*, 248 Mich App 75, 84; 638 NW2d 163 (2001). A statutory provision "is ambiguous only if it 'irreconcilably conflict[s]' with another provision or when it is *equally* susceptible to more than a single meaning." *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (citation omitted; alteration in original). Further, I must emphasize that the reason for these well-established rules of statutory interpretation is to ensure that the courts of this state adhere to their judicial role of applying the law and do not overstep their bounds by acting in a legislative capacity. In other words, the rules of statutory interpretation necessarily mandate judicial restraint in order to ensure the integrity of the separate branches of government. "[I]n our democracy, a legislature is free to make inefficacious or even unwise policy

choices. The correction of these policy choices is not a judicial function as long as the legislative choices do not offend the constitution." *Decker*, 248 Mich App at 84 (citation and quotation marks omitted; alteration in original).

The facts of this matter are not in dispute. Rather, the central issue is a question of law: Whether petitioner is subject to ad valorem tax liability under the language of MCL 211.7ff(2)(b). The Tax Tribunal answered this question in the negative, determining that the Legislature's intent under the Michigan Renaissance Zone Act (RZA), MCL 125.2681 *et seq.*, directed this result.

The Legislature enacted the RZA to assist "local governmental units in encouraging economic development" by permitting the creation of renaissance zones within which entities would be provided temporary relief from certain taxes. MCL 125.2682. Consistent with this purpose, MCL 125.2689(2)(a) of the RZA provides, in part, that "property located in a renaissance zone is exempt from the collection of taxes under . . . [s]ection 7ff of the general property tax act [(GPTA)], 1893 PA 206, MCL 211.7ff." And consistent with this mandate, MCL 211.7ff(1) provides an exemption from taxation under the GPTA:

> For taxes levied after 1996, except as otherwise provided in subsection[] (2) . . . , real property in a renaissance zone and personal property located in a renaissance zone is exempt from taxes collected under this act to the extent and for the duration provided pursuant to the Michigan renaissance zone act, 1996 PA 376, MCL 125.2681 to 125.2696.

Subsection 2 of MCL 211.7ff provides a list of exceptions to this exemption:

Real and personal property in a renaissance zone is not
exempt from collection of the following:

(a) A special assessment levied by the local tax collecting
unit in which the property is located.

(b) *Ad valorem property taxes specifically levied for the
payment of principal and interest of obligations approved by
the electors or obligations pledging the unlimited taxing
power of the local governmental unit.*

(c) A tax levied under section 705, 1211c, or 1212 of the
revised school code, 1976 PA 451, MCL 380.705, 380.1211c,
and 380.1212. [MCL 211.7ff(2) (emphasis added).]

In other words, under these limited circumstances the
exemption from taxation under the GPTA, which is
mandated by the RZA, does not apply and an entity will
be subject to tax liability.

The only exception to the exemption that is at issue
here is MCL 211.7ff(2)(b). Under this provision, an
entity with real or personal property in a renaissance
zone will be subject to an ad valorem property tax that
was "specifically levied for the payment of principal and
interest of [(1)] obligations approved by the electors or
[(2)] obligations pledging the unlimited taxing power of
the local governmental unit." *Id.* A plain reading of this
provision's terms reveals no ambiguity. Reasonable
minds cannot differ in the conclusion that this provi-
sion provides an exception to the RZA exemption if an
ad valorem tax is levied for obligations approved by the
electors *or* for obligations pledging the unlimited taxing
power of the local governmental unit. Simply put, an ad
valorem tax will be applicable if either of these two
types of obligations exist.

Despite its conclusion that MCL 211.7ff(2)(b) is un-
ambiguous, the majority somehow concludes that the
exception to the exemption found in it only applies if an
ad valorem tax is levied for obligations approved by the

electors *of a local governmental unit* or obligations
pledging the unlimited taxing power of the local gov-
ernmental unit. This construction bends the rules of
statutory interpretation and adds additional language
to the statute. Nothing in the plain language of MCL
211.7ff(2)(b) specifies or limits which "electors" must
approve the obligation. The majority's conclusion that
the electors must be "of the local governmental unit,"
which by definition does not include school boards[1] (and
would mean that the exception language would not
apply), is contrary to the plain language of the provi-
sion. The phrase "of the local governmental unit" only
refers to the immediately antecedent phrase, i.e., "ob-
ligations pledging the unlimited taxing power." Nothing
in the grammatical structure of MCL 211.7ff(2)(b)
suggests that "of the local governmental unit" also
applies to the phrase "obligations approved by the
electors." This construction comports with the common
grammatical rule of construction, and a common under-
standing of the English language, "that a modifying
clause will be construed to modify only the last ante-
cedent unless some language in the statute requires a
different interpretation." *People v Small*, 467 Mich 259,
263 & n 4; 650 NW2d 328 (2002) (noting that "[u]nless
set off by commas, a modifying word or phrase, where
no contrary intention appears, refers solely to the last
antecedent"). "[T]he statutory language must be read
and understood in its grammatical context." *People v
Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010). The
majority's interpretation ignores this grammatical rule
by adding a comma before the modifying phrase "of a
governmental unit" and thereby reading an otherwise

---

[1] Currently, section 3(g) of the RZA, MCL 125.2683(g), defines "local
governmental unit" as "a county, city, village, or township." At other
times relevant to this case, the definition has appeared in different
subdivisions of this section.

nonexistent limitation into the statute—that "obligations approved by electors" means obligations approved by electors of a local governmental unit, which only includes counties, cities, villages, or townships. "[A court] cannot read restrictions or limitations into a statute that plainly contains none." *Rusnak v Walker*, 273 Mich App 299, 305; 729 NW2d 542 (2006).

The majority further justifies its interpretation by opining that the failure to add the phrase "of a governmental unit" after "obligations approved by the electors" renders the term "the," as used before "electors," nugatory. It is true that the article "the" is a definite article that may have a specifying effect in some contexts. However, it does not follow that the term "the" is necessarily rendered surplusage if the phrase "obligations approved by *the* electors" is not read to mean "obligations approved by *the* electors [of the local governmental unit]." I would note that the article "the" may also be used to designate a noun "as being used generically," *Random House Webster's College Dictionary* (1997),[2] and that that is how the Legislature used the term "the" here. The majority, however, defines the term "the" to require that the particular electors be defined and then goes a step further to conclude that those electors must be "of the local governmental unit." This is not what the provision states.

I agree with the majority that statutory provisions must not be read in isolation, but in the context of the statutory scheme as a whole. See *Robinson*, 486 Mich at 15. However, nothing in the language of MCL 211.7ff(2) renders my interpretation "inherently inconsistent" with the statutory language or the overall scheme of the

---

[2] An example of how the term "the" may be used in this way is the following: "The dog is a quadruped." *Random House Webster's College Dictionary* (1997).

statute, as the majority asserts. As previously stated, MCL 211.7ff(2) provides a list of exceptions to the RZA exemption:

> Real and personal property in a renaissance zone is not exempt from collection of the following:
>
> (a) A special assessment levied *by the local tax collecting unit* in which the property is located.
>
> (b) Ad valorem property taxes specifically levied for the payment of principal and interest of obligations approved *by the electors* or obligations pledging the unlimited taxing power *of the local governmental unit.*
>
> (c) A tax levied under section 705, 1211c, or 1212 of the revised school code, 1976 PA 451, MCL 380.705, 380.1211c, and 380.1212. [Emphasis added.]

The majority implies that because the statute's "exemption does not apply to '[a] special assessment levied *by the local tax collecting unit*' or to '[a]d valorem property taxes levied for payment of . . . obligations pledging the unlimited taxing power *of the local governmental unit,*' " it must also follow that the ad valorem tax levied under MCL 211.7ff(2)(b) for obligations approved by the electors must be approved by " '*the* electors' of the local governmental unit" rather than "*any* group of 'electors' . . . . " This position is logically untenable; it is based on erroneous deductive reasoning in regard to the relationship between subdivisions (a) and (b) of MCL 211.7ff(2). Moreover, I would also point out that the Legislature's inclusion in subdivision (c) of MCL 211.7ff(2) of an exception to the RZA exemption for taxes levied under the Revised School Code does not mandate the conclusion that MCL 211.7ff(2)(b) must be construed to preclude an ad valorem tax levied for an obligation approved by electors who happen to be a particular school district's electors. And it must be noted that a school district can encompass more than

one discrete local governmental unit or only part of one or more local governmental units. Had the Legislature wished to preclude such an outcome, it could have included the language "of a local governmental unit" after the phrase "obligations approved by the electors." It chose not to do so. The majority has otherwise failed to explain what inherent inconsistency arises within the statutory scheme if MCL 211.7ff(2)(b) is given its plain and ordinary meaning, i.e., the RZA exemption is inapplicable if an ad valorem tax is levied for obligations approved by the electors or for obligations pledging the unlimited taxing power of the local government unit.

For the foregoing reasons, I disagree with the majority's construction of MCL 211.7ff(2)(b), which impermissibly interprets that unambiguous provision and concludes that "the phrase 'of the local governmental unit' clearly applies to both the 'obligations approved by the electors' and the 'obligations pledging the unlimited taxing power.' " Under the circumstances of this case, an ad valorem tax was levied that was a school debt service tax of 13 mills as a result of the school district electors' approval of $116,156,390 in bonds. This was an "obligation[] approved by the electors," and therefore petitioner is subject to taxation under MCL 211.7ff(2)(b). Petitioner cannot avail itself of the RZA's exemption because the factual circumstances fall within the exception to the exemption. I would conclude, then, that the taxes were properly levied against petitioner. I would reverse the decision of the Tax Tribunal.