# STATE OF MICHIGAN

# COURT OF APPEALS

---

CITY OF FRASER,

   Plaintiff-Appellee,

v

ALMEDA UNIVERSITY,

   Defendant-Appellant/Third-Party
   Plaintiff,

v

JOHN DOES 1-99,

   Third-Party Defendants.

FOR PUBLICATION
January 14, 2016

No. 323499
Macomb Circuit Court
LC No. 2013-000449-CZ

---

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

MURRAY, P.J. (*concurring in part, dissenting in part*).

I join the majority's decision to affirm the trial court's order denying defendant Almeda University's motion for summary disposition on the basis of no personal jurisdiction, but dissent from its holding that MCL 390.1603 applies to Almeda. As a result, I would reverse the trial court's judgment and remand for entry of an order granting summary disposition to Almeda.

The Authentic Credentials In Education Act, MCL 390.1601 et seq., is a short, concise act containing only five sections, with only four substantive sections.[1] Section two, MCL 390.1602(a)-(c), contains definitions for some of the critical terms used in the act. Specifically, it provides:

As used in this act:

(a) "Academic credential" means a degree or a diploma, transcript, educational or completion certificate, or *similar document* that indicates completion of a

---

[1] Section one simply declares the name of the act. MCL 390.1601.

-1-

program of study or instruction or completion of 1 or more courses at an institution of higher education or the grant of an associate, bachelor, master, or doctoral degree.

(b) "False academic credential" means an academic credential issued or manufactured by a person that is not a qualified institution.

(c) "Qualified institution" means any of the following:

(*i*) An institution of higher education, as that term is defined in 20 USC 1001, located in the United States.

(*ii*) Any other institution of higher education authorized to do business in this state. [Emphasis added.]

The parties agree that the diplomas issued by Almeda were "false academic credentials," which means that under the statute the diplomas provided to the Fraser police officers were *written* diplomas issued by an institution that was neither (1) one of higher education within the United States as defined in federal law, nor (2) one authorized to do business in this state.

Sections 3 and 4 contain the act's prohibitions, and each section addresses a different concern. In Section 3, MCL 390.1603, the legislature prohibits persons (who are not qualified institutions) from issuing or manufacturing false academic credentials in this state. It specifically states that "[a] person shall not knowingly issue or manufacture a false academic credential in this state." This section prevents "diploma mills" from operating (issuing or manufacturing academic credentials) "in this state." *Id*.[2] Section 4 focuses on limiting an individual's use of a false academic credential by prohibiting individuals from utilizing false academic credentials in certain circumstances, including in employment situations as was done by the Fraser officers:

(1) An individual shall not knowingly use a false academic credential to obtain employment; to obtain a promotion or higher compensation in employment; to obtain admission to a qualified institution; or in connection with any loan, business, trade, profession, or occupation.

(2) An individual who does not have an academic credential shall not knowingly use or claim to have that academic credential to obtain employment or a promotion or higher compensation in employment; to obtain admission to a qualified institution; or in connection with any loan, business, trade, profession, or occupation. [MCL 390.1604(1) & (2).]

---

[2] A "diploma mill" is generally regarded as an unregulated institution that awards degrees or diplomas with little or no academic requirements and that typically have no real value in the marketplace. See *HEB Ministries, Inc v Texas Higher Educ Coordinating Bd*, 235 SW3d 627, 631 (Tex, 2007) and *Merriam-Webster's Collegiate Dictionary* (2014).

Finally, section 5, MCL 390.1605, provides a cause of action for violation of the act, as well as for damages, costs and attorney fees.

As the majority states, the pivotal question is whether under section 3 the false academic credentials were issued in this state. MCL 390.1603. The majority properly looks to dictionaries in its attempt to discern the meaning of an undefined word, *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 40; 869 NW2d 810 (2015), and the definition that it develops for "issue" from both legal and lay dictionaries is a reasonable one.[3] But the majority fails to apply the remainder of what is contained in MCL 390.1603 (particularly the "in this state" portion), and to recognize how an academic credential is issued. When that context is considered, the conclusion must be that MCL 390.1603 does not apply to a person issuing false academic credentials in another state or locale.

As mentioned, section 3 of the statute focuses exclusively upon the actions of the issuing entity, and precludes a person from issuing a false academic credential in this state.[4] Using the most relevant definition of "issue" from *Merriam-Webster's Collegiate Dictionary* (2014), "issue" means "to put forth or distribute" with the example being the "government issued a new airmail stamp." Here the diplomas or other academic credentials were put forth or distributed by Almeda in the Caribbean, where the academic credentials were awarded. The credentials were not put forth or distributed in Michigan, any more than a degree from the University of Montana is "issued" in Michigan when a Michigan resident graduates from that university after taking on-line courses. In other words, once a decision is made that a student or applicant should be awarded a degree, the "person" then puts forth or distributes *from that location* the academic credential. Once the administrative decision is made to award the degree, the diploma is issued—put forth or distributed—from that administrative office, not in the state where the recipient is located. See, e.g., *Starks v Presque Isle Circuit Judge*, 173 Mich 464, 466; 139 NW 29 (1912) ("When these steps are taken and the license is granted, and the approval of the council is indorsed upon the application, the license is issued.") and *Nelson v Lincoln Medical*

---

[3] The majority refers to a canon of statutory construction set forth in a book co-authored by JUSTICE SCALIA, but no provision of this act is ambiguous. Consequently, we cannot (as there is no need to) resort to tools of statutory construction to resolve this case. See *Ashley Ann Arbor LLC v Pittsfield Charter Twp*, 299 Mich App 138, 147; 829 NW2d 299 (2012) and *Exxon Mobil Corp v Allapattah Services, Inc*, 545 US 546, 567; 125 S Ct 2611; 162 L Ed 2d 502 (2005). The disagreement reflected by majority and dissenting opinions "does not transform that which is unambiguous into that which is ambiguous." *Mayor of Lansing v Public Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004). See, also, *Lafarge Midwest Inc v Detroit*, 290 Mich App 240, 247; 801 NW2d 629 (2010) (A reasonable disagreement as to the meaning of the statute does not by itself make a statute ambiguous). And, as I have attempted to show, giving effect to all of the words in section 3 does not in any way frustrate the purpose or intent of the act, particularly when considering the prohibitions in both sections 3 and 4.

[4] As noted, the parties agree that the diplomas are academic credentials, MCL 390.1602(a), that became "false academic credentials" by virtue of Almeda (the "person") not being a qualified institution. MCL 390.1602(b).

*College*, 81 Neb 533; 116 NW 294, 298 (1908) ("The directors, upon recommendation of the faculty, are clothed with power to issue diplomas and grant degrees to the student . . . ."). Because Almeda did not issue the academic credentials in Michigan, section 3 simply does not apply.

The majority concludes otherwise by holding that an academic credential is issued in Michigan when it is mailed or otherwise delivered to an individual in this state. Although this is not an unreasonable interpretation, ultimately it is incorrect. For one thing, the statute says nothing of mailing or delivering into this state. It instead focuses on the issuance of the credential, and for the reasons already explained, that occurs in the locale where the person awarding the credential is located. And as Almeda argues, construing "issue" to mean "mailing" or "delivering," which is what the majority opinion essentially does, expands the statute beyond what the legislature provided for in the words of the statute. Just as importantly, recognizing and enforcing the separate sections of the act and the different issues they address ensures that the objectives underlying the act are enforced.

In sum, the act provides several prohibitions in an attempt to reduce or eliminate the in-state impact of "diploma mills." Section 3 prevents persons (the institution or persons running them) from issuing or manufacturing false academic credentials in this state, while section 4 prohibits individuals that have obtained false academic credentials from using them to their advantage in many different circumstances, and in particular in their employment. The act does not, however, stretch itself so far as to regulate "diploma mills" outside this state's borders; instead, it prohibits their operation in this state and prevents the use of false academic credentials in numerous instances no matter from where they are issued.

/s/ Christopher M. Murray