MURRAY, RJ.

(concurring in part and dissenting in part).

I join the majority’s decision to affirm the trial court’s order denying defendant Almeda University’s motion for summary disposition on the basis of no personal jurisdiction, but dissent from its holding that MCL 390.1603 applies to Almeda. As a result, I would reverse the trial court’s judgment and remand for entry of an order granting summary disposition to Almeda.
The Authentic Credentials in Education Act, MCL 390.1601 et seq., is a short, concise act containing only five sections, with only four substantive sections.[1] Section 2, MCL 390.1602, contains definitions for some of the critical terms used in the act. Specifically, it provides:
As used in this act:
*106 (a) “Academic credential” means a degree or a diploma, transcript, educational or completion certificate, or similar document that indicates completion of a program of study or instruction or completion of 1 or more courses at an institution of higher education or the grant of an associate, bachelor, master, or doctoral degree.
(b) “False academic credential” means an academic credential issued or manufactured by a person that is not a qualified institution.
(c) “Qualified institution” means any of the following:
(j) An institution of higher education, as that term is defined in 20 USC 1001, located in the United States.
(ii) Any other institution of higher education authorized to do business in this state. [Emphasis added.]
The parties agree that the diplomas issued by Almeda were “false academic credentials,” which means that under the statute the diplomas provided to the Fraser police officers were written diplomas issued by an institution that was neither (1) one of higher education within the United States as defined in federal law, nor (2) one authorized to do business in this state.
Sections 3 and 4 contain the act’s prohibitions, and each section addresses a different concern. In § 3, MCL 390.1603, the Legislature prohibits persons (who are not qualified institutions) from issuing or manufacturing false academic credentials in this state. It specifically states that “[a] person shall not knowingly issue or manufacture a false academic credential in this state.” This section prevents diploma mills from operating (issuing or manufacturing academic credentials) “in this state.” Id,.[2] Section 4, MCL 390.1604, focuses on limiting an individual’s use of a false academic creden *107 tial by prohibiting individuals from utilizing false academic credentials in certain circumstances, including in employment situations as was done by the Fraser officers:
(1) An individual shall not knowingly use a false academic credential to obtain employment; to obtain a promotion or higher compensation in employment; to obtain admission to a qualified institution; or in connection with any loan, business, trade, profession, or occupation.
(2) An individual who does not have an academic credential shall not knowingly use or claim to have that academic credential to obtain employment or a promotion or higher compensation in employment; to obtain admission to a qualified institution; or in connection with any loan, business, trade, profession, or occupation. [MCL 390.1604.]
Finally, § 5, MCL 390.1605, provides a cause of action for violation of the act, as well as for damages, costs, and attorney fees.
As the majority states, the pivotal question is whether, under § 3, the false academic credentials were issued in this state. MCL 390.1603. The majority properly looks to dictionaries in its attempt to discern the meaning of an undefined word, Detroit Edison Co v Dep’t of Treasury, 498 Mich 28, 40; 869 NW2d 810 (2015), and the definition that it develops for “issue” from both legal and lay dictionaries is a reasonable one.[3] But the majority fails to apply the remainder of *108 what is contained in MCL 390.1603 (particularly the “in this state” portion), and to recognize how an academic credential is issued. When that context is considered, the conclusion must be that MCL 390.1603 does not apply to a person issuing false academic credentials in another state or locale.
As mentioned, § 3 of the statute focuses exclusively upon the actions of the issuing entity, and precludes a person from issuing a false academic credential in this state.[4] Using the most relevant definition of “issue” from Merriam-Webster’s Collegiate Dictionary (11th ed), “issue” means “to put forth or distribute,” with the example being the “government issued a new airmail stamp.” Here, the diplomas or other academic credentials were put forth or distributed by Almeda in the Caribbean, where the academic credentials were awarded. The credentials were not put forth or distributed in Michigan, any more than a degree from the University of Montana is “issued” in Michigan when a Michigan resident graduates from that university after taking online courses. In other words, once a decision is made that a student or applicant should be awarded a degree, the “person” then puts forth or distributes from *109 that location the academic credential. Once the administrative decision is made to award the degree, the diploma is issued—put forth or distributed—from that administrative office, not in the state where the recipient is located. See, e.g., Starks v Presque Isle Circuit Judge, 173 Mich 464, 466; 139 NW 29 (1912) (“When these steps are taken and the license is granted, and the approval of the council is indorsed upon the application, the license is issued . . . .”), and State ex rel Nelson v Lincoln Med College, 81 Neb 533; 116 NW 294, 298 (1908) (“The directors, upon recommendation of the faculty, are clothed with power to issue diplomas and grant degrees to the student. . . .”). Because Almeda did not issue the academic credentials in Michigan, § 3 simply does not apply.
The majority concludes otherwise by holding that an academic credential is issued in Michigan when it is mailed or otherwise delivered to an individual in this state. Although this is not an unreasonable interpretation, ultimately it is incorrect. For one thing, the statute says nothing of mailing or delivering into this state. It instead focuses on the issuance of the credential, and for the reasons already explained, that occurs in the locale where the person awarding the credential is located. And as Almeda argues, construing “issue” to mean “mailing” or “delivering,” which is what the majority opinion essentially does, expands the statute beyond what the Legislature provided for in the words of the statute. Just as importantly, recognizing and enforcing the separate sections of the act and the different issues they address ensures that the objectives underlying the act are enforced.
In sum, the act provides several prohibitions in an attempt to reduce or eliminate the in-state impact of diploma mills. Section 3 prevents persons (the institu *110 tion or persons running them) from issuing or manufacturing false academic credentials in this state, while § 4 prohibits individuals that have obtained false academic credentials from using them to their advantage in many different circumstances, and in particular in their employment. The act does not, however, stretch itself so far as to regulate diploma mills outside this state’s borders; instead, it prohibits their operation in this state and prevents the use of false academic credentials in numerous instances no matter from where they are issued.

 Section 1 simply declares the name of the act. MCL 390.1601.

 A “diploma mill” is generally regarded as an unregulated institution that awards degrees or diplomas with few or no academic requirements and that typically have no real value in the marketplace. See HEB *107 Ministries, Inc v Texas Higher Ed Coordinating Bd, 235 SW3d 627, 631 (Tex, 2007), and Merriam-Webster’s Collegiate Dictionary (11th ed).

 The majority refers to a canon of statutory construction set forth in a book co-authored by United States Supreme Court Justice Antonin Scalia, but no provision of this act is ambiguous. Consequently, we cannot (as there is no need to) resort to tools of statutory construction to resolve this case.. See Ashley Ann Arbor, LLC v Pittsfield Charter Twp, 299 Mich App 138, 147; 829 NW2d 299 (2012), and Exxon Mobil Corp v *108 Allapattah Servs, Inc, 545 US 546, 567; 125 S Ct 2611; 162 L Ed 2d 502 (2005). The disagreement reflected by majority and dissenting opinions “does not transform that which is unambiguous into that which is ambiguous.” Mayor of Lansing v Pub Serv Comm, 470 Mich 154, 166; 680 NW2d 840 (2004). See also Lafarge Midwest, Inc v Detroit, 290 Mich App 240, 247; 801 NW2d 629 (2010) (stating that a reasonable disagreement as to the meaning of the statute does not by itself make the statute ambiguous). And, as I attempt to show, giving effect to all of the words in § 3 does not in any way frustrate the purpose or intent of the act, particularly when considering the prohibitions in both §§ 3 and 4.

 As noted, the parties agree that the diplomas are academic credentials, MCL 390.1602(a), that became “false academic credentials” by virtue of Almeda (the “person”) not being a qualified institution. MCL 390.1602(b).