*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WOODSIDE BIBLE CHURCH,

Petitioner-Appellant,

v

TOWNSHIP OF FORESTER,

Respondent-Appellee.

UNPUBLISHED
September 30, 2024
12:20 PM

No. 366944
Tax Tribunal
LC No. 21-002948-TT

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Petitioner-appellant Woodside Bible Church appeals as of right the Tax Tribunal order denying petitioner's motion for summary disposition under MCR 2.116(C)(10) and granting that relief to respondent under MCR 2.116(I)(2). The result of the Tax Tribunal's judgment was the affirmance of respondent's denial of a property-tax exemption under MCL 211.7s on the ground that petitioner failed to establish that the subject property was predominately used for religious purposes as required by statute. Petitioner also challenges the tribunal's denial of leave to amend its petition, and asserts that the result violated its equal-protection rights under the state and federal Constitutions. For the reasons set forth below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner, an organization based in Troy with several other "campuses" located throughout the metropolitan Detroit area, describes itself as an evangelical church with a mission to "help people belong to Christ, grow in Christ, and reach the world for Christ." In 2016, petitioner purchased the subject property, a large residence located on the shores of Lake Huron in Forester Township. The property includes a large house that now has 12 bedrooms, a large dining room, and a great room, along with a pole barn and a garage. Petitioner's hope for the property was to create "a place of retreat where people could have extended periods of time away from the busyness of life. In this place, marriages would be strengthened, leaders developed, and pastors encouraged." Petitioner refers to the property as "The Lodge," and markets it to other groups and organizations. It has created a brochure detailing the facilities available and highlighting its availability as a place of retreat and rest. Petitioner's senior executive director of operations, Mike

Fisk, asserted generally by affidavit that from "2017 through 2020, the ministry retreat center [The Lodge] was used as an extension of Woodside, with missions to strengthen marriages, develop leaders, and encourage and counsel pastors, consistently taught from a biblical and prayerful perspective." Because of the COVID-19 pandemic and its attendant "lockdown" restrictions, from March 2020 through May 2021, the property sat unused.

In 2021, the assessed value of the property was over $1.1 million. For each of the 2017 through 2020 tax years, petitioner was granted exemptions from property tax on the property under MCL 211.7s, which provides exemptions to religious societies for "houses of public worship" and "parsonage[s]." In 2021, respondent changed its assessment of the subject property from "exempt" to "residential," and assessed property tax for that year. Petitioner disputed this assessment before respondent's board of review, which confirmed the assessment. Fisk asserted that the township supervisor told him that the reason for the reclassification and denial of an exemption was that the township believed that petitioner was renting out The Lodge for weddings. Fisk denied that petitioner ever rented out The Lodge for weddings, or that any wedding had ever taken place there, and respondent submitted no evidence indicating otherwise. Petitioner then filed an appeal with the Tax Tribunal.[1]

Petitioner eventually filed a motion for summary disposition, arguing that it was entitled as a matter of law to an exemption under MCL 211.7s for facilities owned by a religious society and used predominantly for religious services or for teaching the religious truths and beliefs of the society, on the ground that petitioner used the subject property exclusively for religious services or for teaching religious truths and beliefs. It attached to its motion Fisk's affidavit, its marketing brochure advertising The Lodge, letters its attorney sent to respondent in 2016 and 2017, before and after respondent's approval of an exemption for 2017, a document that petitioner offered as a profit-and-loss statement for the property for 2020 and 2021, its petition to respondent's board of review, and the review board's order denying the petition. Fisk's affidavit was the only evidence plaintiff submitted of petitioner's actual use of the subject property. Fisk generally described the retreats held at The Lodge as being intended to strengthen marriages, develop leaders and groups, and encourage and refresh pastors in a serene setting, and stated that "[a]ll such retreats are bible, prayer and worship centered . . . ." Fisk provided no specific example of an event that included such services, but stated that the property was used in its "mission" to "encourage and support pastors," and as a place former pastors used "at times" to "counsel[] and encourage[]" "several pastors (and sometimes their wives)."

The marketing brochure for The Lodge does not detail any actual uses of the property, but does describe the intended purpose and use of the facilities. The first page with substantive text discusses the history of, and goals for, The Lodge. It describes the property as a "place of retreat" for visitors to have "extended periods of time away from the busyness of life." It closes with a hope that visitors "enjoy some time away," and that "the Lord would encourage you in your marriage, your family, your ministry, or wherever you may be on life's journey." There is no mention of religious services, or of religious teaching or classes. A "What to Expect" page in the

---

[1] The prehearing statements included challenges to the 2021 and 2022 assessments, and the Tax Tribunal noted that the appeal automatically included 2023 under MCL 205.737(5)(a).

-2-

brochure states that "[a]ll activities are planned by the group or organization hosting the retreat." The last page with substantive text describes a bedroom and related amenities, and closes with the slogan, "The Lodge is a place where rest, refreshment, and reflection meet." Nothing in Fisk's affidavit, or any of the other documentary evidence, contained specific examples of how the property was used in 2021 or later. And, nowhere in the brochure can one find references to religious services, worship, teaching, learning, or anything of the like.

Respondent filed a response to petitioner's summary-disposition motion, arguing that the denial of an exemption under MCL 211.7s was proper because petitioner did not use the subject property predominantly for religious services, or the teaching of petitioner's religious beliefs and truths, and supported that contention with evidence obtained from petitioner during discovery of who used the property on specific occasions, and how each organization used it.

In its decision, the Tax Tribunal noted that there was no dispute about petitioner's status as a religious society, and identified the controlling issue as whether petitioner used the subject property predominantly for religious services or for teaching its religious beliefs or truths. Citing the itineraries petitioner provided as discovery responses, the tribunal concluded that the predominant use of the property was by organizations other than petitioner for "leadership development and marriage renewal with an emphasis on rest and recreation," and that most of the activities were "recreational activities such as golf, crafting, games, and general free time," with "little time devoted to teaching religious truths and beliefs." The tribunal concluded that petitioner had not met its burden of establishing that it was entitled to an exemption, and denied petitioner's motion for summary disposition. It further ruled that, under MCR 2.116(I)(2), respondent was entitled to summary disposition instead.

Petitioner moved for reconsideration, which the tribunal denied. In that motion, petitioner also sought leave from the tribunal to amend its petition to assert that it was alternatively entitled to an exemption as a charitable institution under MCL 211.7o(3). The tribunal denied the motion, concluding that petitioner had not shown any palpable error, and that petitioner had ample time to either include the charitable-organization claim in its summary disposition motion, or to amend its petition before the tribunal decided the motion.

This appeal followed.

## II. STANDARD OF REVIEW

"This Court's ability to review decisions of the Tax Tribunal is very limited." *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 630; 806 NW2d 342 (2011). "Michigan's Constitution provides: 'In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation.' " *Id.* at 630-631, quoting Const 1963, art 6, § 28. " '[I]n the absence of fraud,' " this Court's review " 'is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided that they are supported by competent and substantial evidence.' " *President Inn Props*, 291 Mich App at 631, quoting *Antisdale v Galesburg*, 420 Mich 265, 277; 362 NW2d 632 (1984). When the tribunal's decision involves a question of statutory interpretation, review is de novo. *Wexford Med Group v City of Cadillac*, 474 Mich 192, 202; 713

NW2d 734 (2006). "[B]ecause tax exemptions upset the desirable balance achieved by equal taxation, they must be narrowly construed." *Id*. at 204.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). If a court considering a summary disposition motion determines, on the basis of the motion and any evidence submitted, that it is the nonmoving party, and not the moving party, that is entitled to judgment as a matter of law, it may grant the nonmoving party summary disposition. MCR 2.116(I)(2).

Courts review a decision to deny leave to amend pleadings for an abuse of discretion. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004).

> "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome . . . . [W]hen the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." [*Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006), quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).]

## III. ANALYSIS

### A. RELIGIOUS EXEMPTION UNDER MCL 211.7s

The General Property Tax Act[2] provides that "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1. When a taxpayer seeks an exemption, that taxpayer has the burden of proving entitlement to it by a preponderance of the evidence. *ProMed Healthcare v Kalamazoo*, 249 Mich App 490, 494-495; 644 NW2d 47 (2002). Petitioner sought an exemption under MCL 211.7s, which provides:

> Houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and any parsonage owned by a religious society of this state and occupied as a parsonage are exempt from taxation under this act. Houses of public worship includes buildings or other facilities owned by a religious society and used predominantly for religious services or for teaching the religious truths and beliefs of the society.

There is no dispute that petitioner is a religious society, and no claim by petitioner that the subject property is a parsonage. The issue is whether the tribunal erred in concluding that petitioner had not proved that the property was used "predominantly for religious services or for teaching the religious truths and beliefs of the society."

---

[2] MCL 211.1a, *et seq*.

-4-

Petitioner begins by asserting that the tribunal "failed to address" whether its use of the property "involved the teaching of its truths and beliefs and instead considered only whether it conducted traditional church services at the property." But the tribunal's conclusion was that there was no evidence that the property was used predominantly to hold *any* religious services, traditional or otherwise. And the tribunal similarly concluded that the property was predominantly used for recreational purposes, not for teaching of its religious beliefs. The tribunal expressly addressed both points, and rejected petitioner's arguments.

Petitioner's apparent position is that everything it does furthers its mission, and thus must be considered either religious services or the teaching of its religious beliefs. While courts are cautioned to avoid "unnecessarily intrud[ing] into the affairs of religious organizations," *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 19; 551 NW2d 199 (1996), that is not to say that courts are not permitted to engage in scrutiny of whether activities actually occurred. Indeed, MCL 211.7s requires a society seeking a tax exemption to prove that it uses otherwise taxable property "predominantly" for religious purposes. Again, tax exemptions are to be construed narrowly, *Wexford Med Group*, 474 Mich at 204, but petitioner's assertion that everything it does must be considered religious teaching or religious services requires the broadest possible construction of MCL 211.7s. If such a position were acceptable, the Legislature would not have found it necessary to attach any conditions to a religious organization's ownership of property, and would simply have provided that any property owned by a religious organization was exempt from taxation. Also, while everything petitioner does may serve its mission, that does not necessarily mean that everything petitioner does constitutes holding a religious service or teaching others about its religious beliefs. For example, engaging in maintenance of its buildings may help advance its mission by ensuring that there will be a safe, usable place for its congregants to gather, but the maintenance itself is neither a religious service nor teaching about petitioner's belief. MCL 211.7s does not require merely that the use of a property *further the mission* of a religious organization, but instead more specifically requires that the property be predominantly used to perform religious services or education.

Here, the record evidence did not support petitioner's claim that it used the subject property predominantly for religious services or the teaching of its religious beliefs, but rather over-whelmingly indicated that petitioner did not predominately use the property at all. Accordingly, we agree with the Tax Tribunal that petitioner was not entitled to judgment as a matter of law, and instead that respondent was so entitled. The evidence submitted with the motions showed that the property was predominately used by third parties, not petitioner, and appeared to be predominately used for recreational and other nonreligious purposes. And because there was evidence of neither petitioner's, nor the third parties', religious beliefs and truths, even if the third parties' use of the property were primarily for teaching religious beliefs, there was no evidence that those third parties' beliefs were also petitioners' beliefs.[3] The record evidence indicates only that petitioner

---

[3] Petitioner asserts that third-party use of its property is restricted to Christian and nonprofit organizations that conform to its specific beliefs, and that any potential renter of the property must agree to "respect" those beliefs. However, petitioner effectively conceded that it did not submit any evidence of its religious beliefs by arguing that the Tax Tribunal erred by granting respondent summary disposition without permitting petitioner to submit such evidence. The time for

-5-

predominately used the property as a rental venue for other Christian organizations, which itself constituted neither conducting religious services nor teaching religious beliefs.

We note that petitioner attached no evidence to show the specific uses to which the subject property was put. Fisk's affidavit stated generally that the property was used for religious purposes, but offered no specific examples. The marketing brochure actually supported the tribunal's conclusion that the property served as a primary place for recreation and retreat, because it reads much like flier from a secular hotel or vacation venue, speaking of only retreats, recreation, rest, and escaping "the busyness" of everyday life. And, contrary to the assertion that the property was intended to serve petitioner's purposes of teaching its religious beliefs, the pamphlet made clear that organizations renting The Lodge were responsible for planning the itineraries for the events they held.

Respondent, however, submitted evidence of examples of specific, actual uses of the property. That evidence showed that the predominant use of the property was by third parties, and primarily for activities such as golf, crafts, games, and free time. Petitioner was not *defending* a summary disposition motion, it was the moving party. As such, it had the burden of proving its entitlement to the exemption to prevail in its Tax Tribunal appeal, and also of showing its entitlement to judgment as a matter of law when it filed its motion for summary disposition. Yet petitioner, who was the source of the evidence of the specific uses of the subject property, did not attach this evidence to its motion—respondent did while opposing the motion.

Petitioner relies on, *Basic Life Principles*, 217 Mich App 7, but that reliance is misplaced. The issue in *Basic Life Principles* was whether the taxpayer was a religious society, not whether the subject property was used for religious services. The tribunal concluded that it was not a religious society because it was not a church, but rather a corporation formed by members of several religious denominations intended to give seminars teaching a variety of commonly held beliefs; the society itself had no members. *Id*. at 9-10. This Court reversed, holding that the petitioner was a religious society because its "purpose is to teach religious principles," and noting that "nothing within MCL 211.7s . . . requires that a religious society have members." *Id*. at 16. Here, however, there is no dispute that petitioner is a religious society. Additionally, in *Basic Life Principles* there was "no dispute that the statutory requirement regarding the property being used for a religious purpose is satisfied," *id*. at 17, whereas here that is precisely the dispute. In *Basic Life Principles*, the property was undisputedly used predominantly for religious services, conducting religious seminars, and preparing seminar and other educational materials. *Id*. at 10. But the Tax Tribunal had nevertheless premised its ruling in part on its conclusion that petitioner's use of the property failed to satisfy the statute's requirements under the so-called quantum-of-use test. *Id*. at 17-18.

This Court held, however, that application of the quantum-of-use test was not appropriate, and that the proper inquiry was whether the statutorily required use of the property was the taxpayer's predominant use. *Id*. at 19. Here, the quantum-of-use test is not at issue, as the tribunal

_____

petitioner to submit evidence of its beliefs was when it filed its motion for summary disposition, but it did not do so. Therefore, any "failure" of the Tax Tribunal to consider such evidence was wholly the result of petitioner's failure to present it.

analyzed whether the evidence tended to show that petitioner's predominant use of The Lodge was for religious services or teaching its religious beliefs, and reasonably concluded that it was not.

Petitioner argues that the tribunal improperly granted respondent summary disposition because there was a question of fact regarding the use of the subject property. On this record, we hold not only that the Tax Tribunal correctly concluded that no question of fact existed, but that the tribunal correctly recognized that the submitted evidence could only support respondent's position that petitioner was not entitled to the tax exemption. What evidence exists on the record clearly showed that there was no predominant use, by petitioner or anyone else, of the property for religious services or the teaching of petitioner's beliefs. Instead, the predominant use was rental to third parties, who in turn used the property mainly for recreation and relaxation. Again, petitioner protests that the tribunal granted respondent summary disposition without giving it the opportunity to present evidence of its beliefs, but petitioner in fact had, but passed on, that opportunity with its motion for summary disposition.

The Tax Tribunal properly denied petitioner's motion for summary disposition, and properly granted respondent summary disposition under MCR 2.116(I)(2).

## B. LEAVE TO AMEND

MCL 211.7o(1) provides that "[r]eal or personal property owned and occupied by a nonprofit charitable institution while occupied by that nonprofit charitable institution solely for the purposes for which that nonprofit charitable institution was incorporated is exempt from the collection of taxes under this act." MCL 211.7o(3) extends that exemption to "property owned by a nonprofit charitable institution . . . that is leased, loaned, or otherwise made available to another nonprofit charitable institution . . . that is occupied by that nonprofit charitable institution . . . solely for the purposes for which that nonprofit charitable institution . . . was organized . . . ."

MCL 211.7o does not define "charitable institution," but the Supreme Court has set forth a six-factor test to evaluate whether a taxpayer is entitled to an exemption under the statute:

(1) A "charitable institution" must be a nonprofit institution.

(2) A "charitable institution" is one that is organized chiefly, if not solely, for charity.

(3) A "charitable institution" does not offer its charity on a discriminatory basis by choosing who, among the group it purports to serve, deserves the services. Rather, a "charitable institution" serves any person who needs the particular type of charity being offered.

(4) A "charitable institution" brings people's minds or hearts under the influence of education or religion; relieves people's bodies from disease, suffering, or constraint; assists people to establish themselves for life; erects or maintains public buildings or works; or otherwise lessens the burdens of government.

(5) A "charitable institution" can charge for its services as long as the charges are not more than what is needed for its successful maintenance.

(6) A "charitable institution" need not meet any monetary threshold of charity to merit the charitable institution exemption; rather, if the overall nature of the institution is charitable, it is a "charitable institution" regardless of how much money it devotes to charitable activities in a particular year. [*Wexford Med Group*, 474 Mich at 215.]

After the Tax Tribunal denied petitioner's motion for summary disposition and granted it to respondent, petitioner sought in its motion for reconsideration for leave to amend its pleadings to alternatively claim that it was entitled to the tax exemption under MCL 211.7*o*(3).

MCR 2.116(I)(5)[4] provides that a court should allow amendment unless the evidence existing before the court at the time amendment is sought shows there is no justification to do so. "An amendment, however, would not be justified if it would be futile." *Ormsby*, 471 Mich at 53. Further, courts should deny leave to amend when there is undue delay, bad faith or dilatory motive on the movant's part, undue prejudice to the opposing party, or where amendment would be futile. *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, 337 Mich App 360, 373; 976 NW2d 109 (2021).

The Tax Tribunal denied leave to amend, concluding that "[p]etitioner had ample opportunity to appeal an exemption denial under MCL 211.7*o*(3) in its Motion for Summary Disposition or by amending its petition at any point prior to the rendering of the Tribunal's decision and only sought relief for denial under MCL 211.7s." The tribunal properly concluded that petitioner could have raised this issue at any time before the entry of the final order. As respondent argues, two years had passed since petitioner initiated the Tax Tribunal appeal, discovery was over, prehearing statements were exchanged, the parties briefed the issues in connection with petitioner's summary disposition motion, and the tribunal issued a final order and judgment. Petitioner's position that the evidence already of record supported it receiving a tax exemption effectively concedes that petitioner was dilatory about invoking MCL 211.7*o*(3). Petitioner on appeal does not offer, and the record does not bring to light, any reason why petitioner could not have raised this issue in its original petition, with its summary disposition motion, or in a motion for leave to amend filed at before the tribunal issued its decision. Accordingly, the tribunal's denial of the motion to amend was appropriate in light of petitioner's "undue delay" in the matter. See *VHS of Mich*, 337 Mich App at 373.

---

[4] Petitioner cites MCR 2.118(C)(1) as the basis for seeking leave to amend, but that rule does not directly apply, because it operates in connection with issues not appearing in the pleadings that are nevertheless raised and litigated at trial, and there was no trial here. But under MCR 2.116(I)(5), where, as here, a summary disposition motion is filed under Subrules (C)(8), (C)(9), or (C)(10), a trial court "shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

On the basis of the foregoing, we conclude that the Tax Tribunal did not abuse its discretion when it denied petitioner leave to amend its petition.

## C.  PETITIONER'S EQUAL PROTECTION CLAIM

Petitioner's final argument is that respondent and the Tax Tribunal violated its equal-protection rights under the Michigan and United States Constitutions when they denied petitioner its requested tax exemption.  However, petitioner did not raise this issue in the Tax Tribunal, leaving it unpreserved.  See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).  The failure to preserve an issue forfeits appellate review.  *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987).  See also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 5 ("Lest there be further confusion on this point, we hold that the plain-error rule . . . does not apply to civil cases and it is error to do so as it contradicts established Supreme Court precedent, which controls."); slip op at 5.

Additionally, the section of petitioner's brief relating to this issue presents no pertinent facts, argument, or analysis.  Instead, petitioner sets forth only the conclusory assertion that its rights were violated, with brief discussion of the legal authority underlying the argument, and no further discussion, analysis, or even conclusion.  It is well-established that a party may not " 'simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims,' "  *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).  That, however, is precisely what petitioner has done with respect to this issue.  Because petitioner did not preserve this issue, and did not adequately brief it on appeal, we decline to address it.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado